WALKER MEMORIAL BAPTIST CHURCH, INC., Respondent, *v.* JOHN W. SAUNDERS et al., Appellants.

Argued January 22, 1941; decided May 29, 1941.

*Edward S. Bentley, William R. Conklin* and *Henry P. Lipscomb* for appellants.

*Harvey F. Remington, F. K. Remington* and *H. F. Remington* for Baptist Missionary Convention of the State of New York, *amicus curiæ.*

*Melvel W. Snitow* and *Sydney Snitow* for respondent.

FINCH, J. The question presented by this appeal is whether the minister of a Baptish church has been illegally removed from his pastorate and certain members of the church wrongfully expelled from membership in the church corporation.

The plaintiff is a religious corporation which owns and maintains a Baptist church in Harlem. The defendant, the Rev. John W. Saunders, was duly inducted as minister of that church. The other defendants have been active members and communicants of the church. Prior to May, 1939, the minister of the church, the Rev. John W. Saunders,

and some of his devoted followers, including the other defendants in this action, urged that the plaintiff corporation should sell its church building, located at 39–41 East One Hundred and Thirty-second street, New York city, and purchase a larger building. The trustees of the plaintiff religious corporation opposed this proposal and refused to sanction a campaign for funds for a larger church. Without the consent of the trustees, and in defiance of the directions of the trustees, the minister and the other defendants proceeded to collect funds for this purpose. The trustees ordered them to hand over the funds so raised to the trustees. The defendants refused. Thereupon the trustees charged the defendants with misappropriation of moneys and called a meeting for the consideration of those charges. Notice of the proposed meeting was sent to the members of the congregation and was read in regular Sunday church services on two Sundays preceding the meeting as well as being posted on the bulletin board of the church for two weeks prior to the meeting. The place for the meeting, specified in the notice, was the church building. It did not state in what room of the building the meeting would be held.

On the night set for the meeting the minister and almost three hundred communicants of the church met in the large auditorium. The trustees and the followers of the trustees met in a smaller room called the lecture room which is located in the basement of the church. Each group invited the other group to join in the meeting it was holding. Each group refused the invitation of the other group. The large group which met in the auditorium and of which the minister and his followers were a part held a meeting and voted itself as a special *corporate* meeting for the purpose of the transaction of the business of the church. Thereupon the moderator called for the presentation of charges against these defendants. No charges being presented, the moderator dismissed the meeting.

The smaller group, which consisted of the trustees and their followers, conducted its own meeting and after presentation of charges of misappropriation and hearing testi-

mony thereon, voted to discharge the minister and to expel the other defendants from membership in the *corporation*, but not from membership in the church. The court at Special Term found, and the appellants do not dispute here, that this meeting held in the smaller room by the trustees and their followers was the only legal meeting held in accordance with proper notice given by the trustees. The defendants refused to recognize the validity of these corporate resolutions. The plaintiff then brought this action to enjoin the minister and the other defendants from interfering in any way in the affairs of the plaintiff corporation and from entering upon or using for the purpose of religious services the building of the plaintiff. During the pendency of the action a temporary injunction was granted as prayed for in the complaint and the order granting such temporary injunction was affirmed in the Appellate Division. The action was thereafter tried at Special Term and a permanent injunction granted in favor of the plaintiff. The Appellate Division has unanimously affirmed this decision. This appeal is by leave granted by this court.

It should be noted at the outset that there is not presented by this appeal the right of the trustees of the church to demand and receive any funds collected for or on behalf of the Walker Memorial Baptist Church, since the plaintiffs have not included such demand in the complaint.

The sphere of legal activity of a religious corporation in so far as its corporate activities can be separated from its ecclesiastical activities, is governed and limited by the Religious Corporations Law (Cons. Laws, ch. 51), several provisions of which are relevant to the questions here presented. Thus section 5 of article 2 of that law provides that " the *trustees* of every religious corporation shall have the custody and control of all the temporalities and property, real and personal, belonging to the corporation and of the revenues therefrom." (Italics interpolated.) Even this control by the trustees is limited in that it is to be administered " in accordance with the discipline, rules and usages of the corporation and of the ecclesiastical governing body,

if any, to which the corporation is subject." The power of the trustees of an incorporated church is further limited since " this section does not give to the trustees  *  *  *, any control over the calling, settlement, dismissal or removal of its minister, or the fixing of his salary; or any power to fix or change the times, nature or order of the public or social worship of such church." The foregoing section defines the powers of the " trustees " of the religious corporation as distinguished from the corporation itself acting through its voting members. The trustees are not themselves the corporation, for the " members of the association form the  *  *  *  legal entity, which is represented by the trustees;  *  *  *  that the societies are themselves incorporated; that their members are the corporators, and the trustees the managing officers of the corporation." (*Robertson* v. *Bullions*, 11 N. Y. 243, 248, 250.)

We come now to the question to what extent the powers of the corporation are limited by ecclesiastical requirements. Section 25 of article 2 of the Religious Corporations Law provides that no provision of this chapter " authorizes the calling, settlement, dismissal or removal of a minister, or the fixing or changing of his salary." Instead a meeting for such purpose is to be called and governed only according to the " practice, discipline, rules and usages " of the religious denomination or ecclesiastical governing body with which the church is connected. Section 26 of article 2 contains similar provision in regard to worship. These sections are expressly not applicable to Baptist churches. If they applied, then the action taken by the religious corporation in this case would be illegal, for the meeting called by the trustees was concededly not governed in accordance with the " practice, discipline, rules and usages " of the Baptist church. Section 27 of article 2 expressly provides that sections 25 and 26 are not applicable to a " Baptist church, a Congregational church or to any other religious corporation having a congregational form of government." For that reason we must look to other provisions of the statute, and especially to the provisions

of article 7 governing Baptist churches, to find what are the powers of a religious corporation formed as a Baptist church in regard to the conduct of corporate meetings and the control of such corporate meetings over the induction or removal of a minister.

The plaintiff bases its complaint upon, and alleges that the requisite power to remove the minister by corporate meeting can be found in section 170 of article 8. Article 8, however, applies only to Congregational and Independent churches and has no application to Baptist churches, which are governed by article 7. For the purposes of the provisions contained therein article 7 and article 8 are mutually exclusive. The provisions of article 8 cannot, therefore, be applied to a Baptist church.

The only provision in article 7 which specifically refers to ministers is section 139, which provides that " The *trustees* of an incorporated Baptist church shall have no power to settle or remove a minister or to fix his salary or, without the consent of a corporate meeting, to incur debts beyond what is necessary for the administration of the temporal affairs of the church and for the care of the property of the corporation; or to fix or change the time, nature or order of the public or social worship of such church." (Italics interpolated.) This provision refers to the trustees only and not to the corporation itself. As pointed out before the trustees are merely the managing officers of the corporation. (*Robertson* v. *Bullions*, 11 N. Y. 243.)

Section 134 of article 7 provides that the qualified voters at a corporate meeting of an incorporated Baptist church must include the " members of such church in good and regular standing by admission into full communion or membership therewith, or [others] who have statedly worshipped with such church and have regularly contributed to the financial support thereof during the year next preceding such meeting; * * *." This section further provides that the corporation may at a properly noticed corporate meeting restrict the class of voters to members of the church " by admission into full communion or membership therewith."

Thus section 139 and section 134 of article 7, which pertain only to Baptist churches, carry out the general intent of the Religious Corporations Law as evidenced by sections 5, 25 and 26 of article 2, that such law should not change the " practice, discipline, rules and usages " of the religious denomination or ecclesiastical governing body with which the church corporation is connected.

The court at Special Term finding the Religious Corporations Law silent as to the proper procedure for the removal of a minister of a Baptist church, went to the General Corporation Law (Cons. Laws, ch. 23) and found the provision that a corporation may appoint such officers and agents as its business shall require. (General Corporation Law, § 14, subd. 4.) The court at Special Term then found that a minister was such an officer or agent of the corporation and construing the power to appoint as including the power to remove, reached the conclusion that the corporation, as opposed to the ecclesiastical body of the church, had the power to remove the minister. This construction of the law and the facts is urged by the plaintiff in this court.

An answer to the foregoing contention lies in the fact that there is no evidence in this record to sustain a finding that the minister of a Baptist church is an officer, agent or employee of the religious corporation. The uncontradicted testimony of defendants' expert witnesses fully expounded the customs, practices and usages of the Baptist faith relating to the calling and dismissal of ministers and to the distinction between the Baptist church as a religious society and as a religious corporation. These witnesses testified that the Rev. Mr. Saunders was called to the Walker Memorial Baptist Church pursuant to a call issued by a " church meeting," i. e., a meeting of the religious society after a recommendation by the board of deacons of the church. This, according to these witnesses, is the usual custom for issuing a call in a Baptist church and the trustees of such church have no voice in this matter, except as members of the religious society. It was further testified

that under the customs, practices and usages of the Baptist faith, there is a clear-cut distinction between the spiritual body and the incorporated church. The spiritual body is of ancient origin, recognizing and following the laws and precepts of the New Testament. The spiritual body has two classes of officers, the pastor and the deacons. The pastor is the chief spiritual officer, having direct charge of the spiritual matters of preaching and teaching and the general spiritual oversight of the members of the congregation. The deacons are elected by the spiritual body, and assist the pastor in the discharge of his duties. Formerly the deacons also had charge of the temporalities, but when it was found desirable to form a corporation to hold the *temporalities*, trustees were elected to handle the finances and to control and manage the temporalities of the church. It was further testified that should the church wish to discharge the minister, the matter must originate in the board of deacons and that " a ' church meeting,' the only body that can handle such matters," would have to pass upon such discharge. " It is not the practice in any Baptist church " for a corporate meeting to pass upon such charges.

Section 2 of article 1 of the Religious Corporations Law defines the term " minister " as including " a clergyman, pastor, rector, priest, rabbi, or other person having authority from, or in accordance with, the rules and regulations of the governing ecclesiastical body of the denomination or order, if any, to which the church belongs, or otherwise from the church, to preside over and direct the spiritual affairs of the church." Although it was testified that there is no central governing body in the Baptist denomination, the alliances of Baptist churches being merely for the establishment of publishing houses for the dissemination of religious printed matter and for co-operation in educational and missionary work, the Baptist churches accept Hiscox's Directory (the New Directory for Baptist Churches by Rev. Edward S. Hiscox) as an explanation and codification of the principles governing the policies and customs and usages of the Baptist churches. Thus in the instant case

there was no superior governing ecclesiastical body which had the power to prescribe the methods by which the Walker Memorial Baptist Church could dismiss its minister, but there was a recognized interpretation of the Scriptures codifying the customs and usages of the Baptist church in general. It was testified that the Walker Memorial Church subscribed to these customs.

Since it is undisputed that the Baptist church has rules and regulations for the appointment of ministers, and since a minister is one who has authority to " preside over and direct the spiritual affairs of the church," there cannot be any sound basis for the conclusion that the minister of a Baptist church is an officer of the legal entity which is given control only of the temporalities of the church, which conclusion would be exactly contrary to the rules and regulations by which the church considers itself governed. It follows that the minister of a Baptist church, under the rules and regulations of that denomination, is an officer of the religious society of the church and is not an officer of the religious corporation. This distinction between the church as a religious society and the church as a religious corporation has long been recognized and clearly formulated by the previous decisions of this court. (*Petty* v. *Tooker*, 21 N. Y. 267; *People ex rel. Dilcher* v. *German United Evangelical St. Stephen's Church*, 53 N. Y. 103; *Landers* v. *Frank Street Methodist Episcopal Church*, 114 N. Y. 626; *Bristor* v. *Burr*, 120 N. Y. 427; *Westminster Presbyterian Church* v. *Trustees of Presbytery of New York*, 211 N. Y. 214; *Fiske* v. *Beatty*, 206 App. Div. 349; affd., 238 N. Y. 598.) It follows, therefore, that the plaintiff corporation had no power to discharge the defendant, the Rev. Mr. Saunders, from his position as minister of the Walker Memorial Baptist Church.

The question still remains whether the corporation could expel the other defendants from membership in the corporation. The defendants' expert witnesses testified and it is not disputed here by the plaintiff that the corporation cannot and has not expelled them from the spiritual body.

Relevant to this question, section 134 of article 7 provides that " at a corporate meeting of an incorporated Baptist church the qualified voters shall be all persons of full age, who are then members of such church in good and regular standing by admission into full communion or membership therewith, or [others] who have statedly worshipped with such church and have regularly contributed to the financial support thereof during the year next preceding such meeting." Thus by this section all members of the church of full age who have been admitted to church membership by admission into full communion or membership are *ipso facto* voters of the corporation. Although it was found as a fact by the court at Special Term that on April 10, 1939, this church had passed a resolution requiring that in order for voters to be eligible to vote at corporate meetings it would be necessary for the said voters to pay $1.50 per quarter year, without passing upon the power of the church to so restrict voting powers of the church members, it was not alleged here that any of the defendants had not qualified to vote. Therefore, since all these defendants are members of the spiritual body of the church, it follows that the church corporation had no right to expel them from voting rights in the religious corporation.

The same result, namely, that the church corporation had no right to expel them from voting rights in the religious corporation, follows also from the testimony of the expert witnesses that there are no members of the corporation, merely voters, and that membership in a Baptist church may be terminated in three ways only, (1) by transfer, namely, by delivery of letter to another Baptist church, (2) by expulsion, when the offending member has violated the discipline of the church and the ecclesiastical body regards him as not fit for membership therein, and (3) by death. Since termination of membership in the religious society by means of the first two of these methods must be by the religious body upon the recommendation of the board of deacons, the church corporation has no power to expel a church member from ecclesiastical membership.

As pointed out above, membership in the ecclesiastical body *ipso facto* allows the church member to vote in the meeting of the religious corporation.

The plaintiff urges upon this appeal that the law of the case was conclusively determined by the order of the Appellate Division affirming the granting of the temporary injunction since that order, it is argued, constitutes an adjudication that the complaint sets forth a good cause of action. A complete answer to this contention is that the granting of a temporary injunction serves only to hold the matter in *statu quo* until opportunity is afforded to decide upon the merits. The granting or refusal of a temporary injunction does not constitute the law of the case or an adjudication on the merits, and the issues must be tried to the same extent as though no temporary injunction had been applied for. In addition, since the injunction order lay in the discretion of the Special Term and the Appellate Division, the decision thereon was not appealable to this court (*Brown* v. *Keeney Settlement Cheese Assn.*, 59 N. Y. 242; *Strasser* v. *Moonelis*, 108 N. Y. 611; *Schneider* v. *City of Rochester*, 155 N. Y. 619), and the proceeding is not material here.

It follows that the judgments should be reversed and the complaint dismissed, with costs.

Lehman, Ch. J., Loughran, Rippey, Lewis, Conway and Desmond, JJ., concur.

Judgments reversed, etc.