BEULAH WESLEYAN METHODIST CHURCH, Plaintiff, *v.* JAMES F. HENRY, Defendant.

Supreme Court, Special Term, New York County, April 9, 1946.

*Edward A. Brown* for plaintiff.

*Lucius L. Delany* for defendant.

CHURCH, J. This action has been brought to secure a permanent injunction and incidental relief, to restrain the defendant

from continuing to act as pastor or minister of the church of the plaintiff, the Beulah Wesleyan Methodist Church in the city of New York.

It appears that Beulah Wesleyan Methodist Church had its beginning in prayer meetings and that it was organized as a church some time in 1913, under the leadership of the Reverend A. B. Baker· as pastor. He was succeeded in 1915 by the Reverend Ingraham Thomas, whose pastorate continued until his death in 1944. The great majority, if not all the members, of the church at the time of its organization had been members of the Wesleyan Methodist denomination in the British West Indies and they founded the plaintiff church with the purpose of continuing their denominational worship as conducted in the Wesleyan Methodist Church of Great Britain. With this end in view, the Reverend Thomas apparently sought to have Beulah Wesleyan Methodist Church received into one of the English conferences but his efforts were unavailing and the plaintiff church was not accepted by any English conference.

In 1918, under the leadership of its then pastor, the Reverend Thomas, the plaintiff was incorporated under the provisions of article 10 of the Religious Corporations Law of the State of New York.

There was testimony at the trial that a conference was formed by several independent churches in this city, all like the plaintiff, comprising members of the Wesleyan Methodist faith; this conference, however, was not a part of, nor was it authorized or recognized by, the Wesleyan Methodist Church in England. Plaintiff became a member of this conference for a brief period ending in 1940.

There can be no doubt that the members of the church of the plaintiff in ecclesiastical matters observe and follow the doctrines and practices of the Wesleyan Methodist Church as it exists in Great Britain and as distinguished from the Methodist Church and its various branches and forms in this country.

Following the death of the Reverend Thomas, early in the year 1944, the congregation of Beulah Wesleyan Methodist Church was without a pastor or minister until the defendant, on January 26, 1945, accepted a "call" or invitation on behalf of the board of trustees, the leaders and the congregation, to assume the pastorate of the church for a period of three years beginning March 1, 1945, at an annual salary of $1,920, payable in equal monthly installments. He was inducted or installed as pastor on March 11, 1945.

During this period following the death of the Reverend Thomas the plaintiff church or the congregation thereof was presided over by Mr. David S. Bruno, who is the chairman of the board of trustees of the plaintiff corporation and who styles himself president of the plaintiff corporation, although it is not entirely clear upon what he bases his right to such title. At any rate, the evidence in the case shows that preliminary negotiations leading up to the " call " and its acceptance by the defendant were carried on between Mr. Bruno and the defendant towards the end of 1944 and early in 1945.

The beginning of defendant's pastorate appears to have been attended by harmony in the congregation but in August, certain disagreements having arisen, the defendant was served with written charges or grievances to which he was requested to reply in writing. Following his failure to reply he was again requested in writing on October 1, 1945, to reply to the charges previously made.

On October 16, 1945, a quarterly meeting of the leaders, stewards, stewardesses, trustees and auxiliary heads of the church was held at which the defendant was present and at which demands were made that he read certain communications which he was claimed to have received. This meeting broke up in disorder and confusion and he was compelled to flee from the meeting to avoid physical violence. Many of the members who attended the meeting left with him. The testimony of the defendant that after religious services a majority of the members expressed satisfaction with his pastorate is disregarded by the court and stricken from the record as hearsay and a conclusion by the witness.

Mr. David S. Bruno, the chairman of the board of trustees, testified on behalf of the plaintiff that he called the meeting to order after the defendant fled and that by motion duly made and carried he was authorized to retain counsel on behalf of the plaintiff and to commence this action. His testimony was contradicted by that of other witnesses, some of whom were called on behalf of the defendant.

The plaintiff contends that a special quarterly meeting of the leaders, stewards, stewardesses, trustees and auxiliary heads of the church was called for November 20, 1945, on five days' notice in writing and that at such meeting, by a vote of twenty-one out of the twenty-five persons who attended the meeting a resolution was adopted terminating the services of the defendant and removing him as pastor of the church. The fundamental question involved in this litigation concerns the validity

and legality of such removal. In support of its contentions the plaintiff placed in evidence a set of by-laws alleged to have been adopted in December, 1944, but it is evident that the claim that these or any other by-laws have been properly and legally adopted has not been established by the fair preponderance of the credible evidence.

" The sphere of legal activity of a religious corporation in so far as its corporate activities can be separated from its ecclesiastical activities, is governed and limited by the Religious Corporations Law " (*Walker Memorial Baptist Church* v. *Saunders,* 285 N. Y. 462, 467).

The power conferred on the trustees of an incorporated church by the provisions of the Religious Corporations Law (art. 2, § 5) is limited by the language of the statute. " This section does not give to the trustees * * * any control over the calling, settlement, dismissal or removal of its minister * * *." The trustees are not the corporation, for the " members of the association form the * * * legal entity which is represented by the trustees, * * * the societies are themselves incorporated; * * * their members are the corporators, and the trustees the managing officers or the corporation." (*Robertson* v. *Bullions,* 11 N. Y. 243, 248–250; *Walker Memorial Baptist Church* v. *Saunders, supra.*)

Section 25 of article 2 of the Religious Corporations Law provides that " No provision of this chapter authorizes the calling, settlement, dismissal or removal of a minister * * * and a meeting of a church corporation for any such purpose shall be called, held, moderated, conducted, governed and notice of such meeting given and person to preside thereat ascertained and the qualification of voters thereat determined, not as required by any provision of this chapter but only according to the aforesaid laws and regulations, practice, discipline, rules and usages of the religious denomination or ecclesiastical governing body, if any, with which the church corporation is connected."

This section applies to the plaintiff, which was incorporated as a denominational church corporation pursuant to the provisions of article 10 of the Religious Corporations Law. Clearly, before the defendant can be removed it is necessary that a meeting of the church corporation be called for such purpose and it can act only through its voting members. The statute further requires that such meeting shall be called, held, moderated, conducted and governed not according to the requirements of the law but only according to the " aforesaid laws and regu-

lations, practice, discipline, rules and usages of the religious denomination or ecclesiastical governing body, if any, with which the church corporation is connected.'' The section further provides that notice of such meeting must be given, the person to preside at the meeting ascertained and the qualification of voters thereat determined according to the same '' laws and regulations, practice, discipline, rules and usages ''.

The plaintiff failed to satisfy the burden placed on it and failed to establish by a fair preponderance of credible evidence that the discipline applicable to the plaintiff and governing the removal of the defendant was as set forth in the volume received in evidence as plaintiff's Exhibit 6 and entitled '' A Summary of Methodist Law and Discipline. Fifth Edition; Revised to the Conference of 1923.''

Even if it be assumed that predecessors of the defendant had such a book in their possession and had referred to it in connection with matters of discipline affecting the Beulah Wesleyan Methodist Church, concededly no occasion had arisen previously to apply any provision contained in the book to the question of the removal of a minister or pastor of the plaintiff church.

The argument of the plaintiff is further weakened by the fact that, at the time of his appointment as pastor of Beulah Wesleyan Methodist Church the defendant had been to the knowledge of members of the plaintiff church, a Baptist minister and not a member of the Wesleyan Methodist Church. It further appears that, in extending the '' call '' or invitation to its pastorate, conditions were attached which prevented the defendant from exercising the authority to appoint leaders in the plaintiff church which authority might have been his if the provisions of the printed book of discipline were rigidly observed by the plaintiff.

In addition, the plaintiff failed to establish that a copy of the '' Discipline '' was made available to the defendant for his use or that he was ever acquainted with its contents.

A reading of the volume which was received in evidence discloses that the '' Discipline '' provides (p. 53): '' the Leaders may be described as Sub-Pastors, and are links between the Members and the Ministers. In a Leaders Meeting, if it be rightly and regularly conducted, the Minister is made aware of the condition of the Church; the needs of the poor, the sick, the spiritually feeble, and the tempted are brought to his attention, and pastoral oversight is thereby made in all cases easier, and in some cases possible, where it would otherwise have been impossible.''

It provides further (p. 134) : " The appointment of Preachers shall remain solely with the Conference." In appendix I (p. 529) under heading " Concerning Discipline " it is provided that: " 1. The appointment of Preachers shall remain solely with the Conference; and no Trustee, or number of Trustees, shall expel or exclude from their Chapel or Chapels, any Preachers so appointed. 2. Nevertheless, if the majority of the Trustees, or the majority of the Stewards and Leaders of any Society, believe that any Preacher appointed by the Circuit is immoral, erroneous in doctrines, deficient in abilities, or that he has broken any of the Rules above mentioned, they shall have authority to summon the Preachers of the District and all the Trustees, Stewards and Leaders of the Circuit to meet in their Chapel, on a day and hour appointed. * * * And if the Majority of the Meeting judge the accused Preacher is immoral, erroneous in doctrines, deficient in abilities, or has broken any of the Rules above mentioned, he shall be considered as removed from that circuit." This appendix comprises the article of agreement for general pacification signed by two of the earliest leaders of the Wesleyan Church, in 1795.

Appendix II of the volume containing the discipline contains the regulations made at Leeds, England, in 1797, and has been pointed out by the plaintiff's attorney as containing provisions in support of his contentions. The paragraphs to which he refers relate to quarterly meetings in any given circuit (pp. 534, 535) and not to quarterly meetings of the leaders of any particular society which under the discipline means all the members of the church at each local center and which " constitutes the Church in that place." (P. 13.)

Appendix III in the volume of the discipline received in evidence entitled Wesleyan Methodist Chapel, Model Deed, 1832, which is described (p. 62) as " part and parcel of the whole machinery by which * * * Methodism is carried on ", contains the following provision (p. 539) : " if the Stewards and Leaders of Classes for the time being of the Society of the said people called Methodists, assembling at or belonging to the said Chapel or place of Religious Worship, or a majority of them, shall believe that any Preacher * * * is either Immoral, Erroneous in Doctrine, or Deficient in Ability, * * * then, in every such case, it shall be lawful for the said Trustees * * * or for the said Society Stewards and Leaders of Classes * * * to summon the Preachers of the District in which the said Chapel or place of Religious Worship shall for the time being be situated, and also all the Trustees,

Stewards, and Leaders of the Circuit, in which the said Chapel or place of Religious Worship shall for the time being be situated, to meet at the Chapel or place of Religious Worship, on a day and hour to be appointed   *   *   *.''

It thus becomes quite clear that under the Methodist law and discipline applicable to the Wesleyan Methodist Church in Great Britain there was no power in the trustees, stewards or leaders of a local church to remove its pastor or minister.

The plaintiff has failed to establish, by a clear preponderance of credible evidence, the existence of any law or regulation, practice, discipline, rule or usage whereby the power or authority of the ministers, trustees, stewards and leaders of the circuit under the English discipline was transferred to the trustees, stewards, stewardesses and leaders of the plaintiff church.

In the absence of any such proof the attempted removal of the defendant as pastor of Beulah Wesleyan Methodist Church by a majority vote at the meeting held on November 20, 1945, was invalid and illegal and the defendant is entitled to judgment on the law and the facts, dismissing the complaint with costs. The proposed findings of fact and conclusions of law have been passed on as indicated in the margin. Settle the decision containing all findings and conclusions together with the final judgment.