Miles F. McDonald, J.
The plaintiffs in this action are (1) the International Longshoremen’s Association, commonly known as the ILA, an international labor union, organized in 1892 and now comprising over 60,000 members divided into over 450 locals throughout the United States and Canada; (2) Local 968 of the ILA, chartered as a constituent local of the plaintiff international in 1917; and (3) individual members of Local 968 ILA. The members of Local 968 ILA are longshoremen who work in the Port of New York and vicinity. The purposes of the local are, among other thing's, to bargain collectively on behalf of the members who seek improvements in their working conditions. The defendants are (1) former members and officers of Local 968 ILA; (2) Local 968 ILA-AFL, an association which the principal defendants recently organized and to which they have attempted to transfer the funds, assets and property of the plaintiff local, and (3) the banks who are believed to be the depositories of the funds and assets of the plaintiff local.
Plaintiffs move herein for a temporary injunction restraining the defendants from using, collecting, transferring or otherwise disposing of any of the funds and property of Local 968, ILA, or representing to the public that they are officers and members of plaintiff Local 968, from representing that the individual plaintiffs are no longer officers and members of Local 968, from using the name Local 968 ILA or any similar name, from collecting dues from the members of plaintiff Local 968, from interfering with the activities and functions of the plaintiff local, and also enjoining the defendant banks from paying out, distributing or transferring any of the funds and assets of the plaintiff Local 968. Plaintiffs also ask that a temporary receiver be appointed for the real estate described in the complaint and moving papers. Defendants cross-move to dismiss the complaint upon the ground it is insufficient in law.
Apparently, in September, 1953, after considerable publicity and consideration had been given by public officials and others *467 to the conditions existing on the New York waterfront, the American Federation of Labor cancelled the affiliation of the plaintiff International Longshoremen’s Association with the American Federation of Labor. Thereafter and on October 3, 1953, a meeting was held by Local 968 pursuant to a postcard notice to its members, which stated: “A special and regular meeting of Local 968 will be held on Saturday, October 3, 1953, at 7:30 p.m. at Carlton Y. In accordance with the instruction of the membership, the officers will deliver a report and recommendation with respect to the future position of the Local as a result of the expulsion of the ILA from the AFL.”
Plaintiffs allege that during the course of this meeting the matter of the disaffiliation of the plaintiff local from the plaintiff international was brought up and a motion was made and passed that the entire question be referred to the executive board of the local. Plaintiffs also aver that none of the members of the Local 968 were notified that the question of disaffiliation would be taken up at this meeting nor were they notified of any meeting where a resolution concerning disaffiliation of the local was discussed and voted upon. Plaintiffs also allege that more than 10 members of the plaintiff local have manifested their intention of continuing as members of Local 968.
The defendant Jacobs, the secretary and business agent of the defendant Local ILA-AFL, states in his affidavit:
‘ ‘ After a protracted discussion, the local union membership voted to disaffiliate from Local 968 ILA and appointed deponent and other officers as a committee to investigate the possibility of direct affiliation with the AFL upon proper terms and conditions, and if satisfied to apply for a charter. * * *
“ The Committee, pursuant to such instructions, held discussions with representatives of the AFL and obtained satisfactory assurances. Thereafter, Local 968 ILA-AFL was duly chartered and organized.”
Plaintiffs allege further that since this meeting was held defendants have sought to change the names on the bank accounts to that of the new local and that the defendants have been drawing checks on the bank accounts of plaintiff local. Plaintiffs also allege that defendants have been exercising control over the real estate held in the name of the plaintiff local and have been collecting the rents.
The question presented whether the complaint states a good cause of action must necessarily be decided first. A pleading challenged for legal insufficiency must be construed broadly and liberally and every intendment and fair inference is in favor of the pleading. “If in any aspect upon the facts stated the *468 plaintiff is entitled to recovery, the motion should be denied.” (Dyer v. Broadway Cent. Bank, 252 N. Y. 430, 432-433.)
At the outset it might be well to point out that the law in New York is settled, that the constitution and by-laws of the international union, the charter issued to the local and the local’s constitution constitute contracts binding upon the international, the local and its membership. (Polin v. Kaplan, 257 N. Y. 277; Steinmiller v. McKeon, 21 N. Y. S. 2d 621, affd. 261 App. Div. 899, affd. 288 N. Y. 508; Nilan v. Colleran, 283 N. Y. 84.)
Under the ILA’s constitution (art. XVI, § 9) it is provided that: “ All initiation fees, dues, assessments, and other monies paid to a Local Union, are the property of the I.L.A. and are received by the Local Union as trustee for the benefit of the I.L.A. and all books, records, funds, property and assets, in the possession of and subject to the control of any Local Union, is and shall be and remain the property of the I.L.A., held and retained by such Local Union as trustee for the I.L.A. with full power to use them for its own benefit and for the benefit of its members, in accordance with the provisions of its Charter and By-Laws and of this Constitution so long as the Local Union remains affiliated with and part of the I.L.A. In the event that the membership of any Local Union falls below ten (10) or that a Local Union is expelled, dissolved, reorganized, consolidated, secedes, or withdraws from the I.L.A., all the books, records, funds, property and assets of such Local Union shall revert to the I.L.A. and shall be delivered to the International Secretary-Treasurer forthwith, to be held by him in trust until final distribution of same by the Executive Council.”
Sections 5 and 6 of article XII of the international constitution provide, among other things, as follows:
“ Section 5. Except as provided in Section 4 of this Article, no Local Union shall be dissolved so long as at least ten (10) members object to its dissolution at a meeting called to consider the question.
“Section 6. Subject to the continuing approval of the International President, each Local Union shall adopt By-Laws for its government which shall not be inconsistent with the provisions of the Constitution or By-Laws of the District Council and of the District in which such Local Union is located. In the event of a conflict between the By-Laws of a Local Union, and the provisions of this Constitution, or those of a Constitution or By-Laws of the District Council or the District, such Local By-Laws shall be null and void. All subdivisions of the International shall file with the Office of the International their *469 By-Laws and such amendments and changes as they may make from time to time to such By-Laws. ’ ’
Section 5 of article XXVI provides as follows: “A Local Union cannot withdraw from the I.L.A. or dissolve as long as ten members in good standing object thereto.”
Section 1 of article XXV provides as follows: “ Section 1. It shall be unlawful for any individual member, Local Union, District Council or any other group or individual to use the name £ International Longshoremen’s Association,’ or its abbreviation, 1 I.L.A.,’ its emblem or trademark, for any advertising purposes whatsoever, without the written authority so to do from the International Executive officers.”
Defendants’ argument that plaintiffs’ cause of action is insufficient in law is based upon the contention that the contracts between the plaintiff international and Local 968 are subject to an implied condition that the International Longshoremen’s Association remain affiliated with the American Federation of Labor. Defendants maintain that the ILA’s rights under these contracts are unenforcible by reason of the ILA’s expulsion from the AFL. Support for this theory of such an implied condition will be found in the recent case of Clark v. Fitzgerald (197 Misc. 355).
To sustain their contention that the court should invoke this doctrine of an implied condition in the present case, defendants point to certain references in the ILA’s constitution, particularly those to the effect that the AFL’s conventions are to take precedence over the ILA’s conventions, that the locals should become affiliated with the city central bodies and State Federations of Labor of the AFL, that ILA delegates should be sent to the AFL conventions, and further, that no person whose principles and teachings are opposed to those of the ILA or AFL are to be eligible for membership in the ILA. Defendants also claim that the AFL has carried on educational campaigns for the benefit of the membership of the ILA and have frequently come to the aid of the local affiliates.
The plaintiffs argue, however, the ILA was organized in 1892 and it was not until 1896 that the ILA became affiliated with the AFL. Plaintiffs urge that no mention is made in the ILA’s constitution or in its AFL certificate of affiliation of any condition to the effect that the ILA must be or continue to remain affiliated with the AFL. The plaintiff Local 968 was chartered by the ILA in 1917 and the application for a charter makes no mention of the American Federation of Labor. The charter granted by the ILA to Local 968 and the local’s constitution likewise make no reference whatever to the AFL. With respect *470 to the local’s name, its constitution states “ This Local shall be known as Local 968 of the International Longshoremen’s Association.” It thus appears that the basic documents of the ILA and Local 968 do not contain any express conditions of continued affiliation between thé ILA and the AFL.
The motion to dismiss must be decided upon the pleadings alone and the facts upon which a finding of an implied condition requiring affiliation with the AFL are matters not contained in the pleading and cannot be considered upon the question of the sufficiency of the complaint but may be considered upon the application for injunctive relief.
It is also to be noted that the defendants’ affidavits do not allege that the plaintiff local was organized as a result of an AFL campaign or that appeals for membership were based upon the ILA’s affiliation with the AFL. Further, no evidence is submitted by the defendants that the stationery, membership cards, insignia or other printed matter refer to the fact that the local is or was affiliated with the AFL.
In the light of the foregoing, it would seem to me that the complaint establishes prima facie, at least, that there are no conditions, express or implied, of continued affiliation between the ILA and the AFL, either in the constitutions or in the charters of the ILA or Local 968. It is also my view that the factual averments in the plaintiffs’ affidavits submitted in support of the application for injunctive relief are insufficient to warrant an affirmative finding of the existence of such an implied condition of continued affiliation referred to in the case of Clark v. Fitzgerald (197 Misc. 355, supra). Such proof, however, may be supplied upon the trial of the action.
There also seems to be no doubt that the purported action taken at the meeting of the plaintiff local on October 3, 1953 was not only beyond the power of the meeting, but it was also in violation of the rights of the plaintiffs. The notice of the meeting specified one purpose to hear a report and recommendation, but the action taken was entirely different. The notice of the meeting* was defective, in that it did not apprise the membership that anything so drastic and so far outside the ordinary business of the union as a dissolution of the local and a change of affiliation was to be presented at the meeting. If, as the defendant Jacobs alleges, the members of the meeting voted to disaffiliate, such action was not accomplished because of the defective notice. (Suffridge v. O’Grady, 22 Misc 2d 453.)
The rights of the individual plaintiffs as members of the plaintiff local cannot, be lost, except in the manner permitted by the constitution from which these rights spring, and these include *471 the right to have the name, funds and property of the local remain intact and subject only to the use of the plaintiff local. Under section 5 of article XXVI of the ILA’s constitution, quoted above, the local remains in existence if 10 members remain loyal. From the papers submitted, it seems clear that more than 10 members of the plaintiff local wish to continue their membership and to carry on its activities. In the circumstances, there could be no valid transfer of the local’s assets by the majority group in the local to another organization.
In Brownfield v. Simon (94 Misc. 720, affd. without opinion 174 App. Div. 872, affd. without opinion 225 N. Y. 643), the constitution of the union contained the provision that no local union could withdraw as long as seven members thereof at a special meeting called for that purpose objected and were willing to retain the charter. A majority of the local decided to secede from the original national organization and to affiliate with another national organization, but 32 members of the local in good standing opposed such disaffiliation and resolved to retain their original charter. Upon these facts the court held that the members remaining loyal to the original affiliation, although a minority, had the right to the funds of the union.
The same result was reached in O’Neill v. Delaney (158 N. Y. S. 665). There the court, after holding that the loyal minority had title to the funds of the union as against the majority who had seceded, stated that a mere majority could not make a transfer of the funds to another organization, since a resolution to withdraw from the parent organization involves a modification of the contract upon which the existence of the local union is based.
So, too, in Steinmiller v. McKeon (21 N. Y. S. 2d 621, supra), the court held, under somewhat similar circumstances, that provisions of the national constitution were contractual obligations which inhibited the majority from withdrawing and transferring the funds and property of the local to a newly formed organization to the detriment of the rights of the minority who desired to continue the organization in its present form.
Furthermore, even if the action taken by the majority of the members of Local 968 at the meeting on October 3 was valid, title to and possession of the defendant local union’s books, records, property, funds and assets upon such disaffiliation would be vested in the plaintiff international union pursuant to section 9 of article XVI of the ILA’s constitution quoted above. (Feller v. Egelhofer, 22 Misc 2d 445; State Council of Order of United Amer. Mechanics v. Hotaling, 184 App. Div. 750; Wolchok v. Durst, 66 N. Y. S. 2d 295.)
*472 Courts of equity will intervene in cases of this character to compel the protection or restoration of rights which have been unlawfully invaded or denied (Canfield v. Moreschi, 268 App. Div. 64, 73) and the granting of a temporary injunction serves only to hold the matter in status quo until opportunity is afforded to decide upon the merits. The granting of a temporary injunction does not constitute the law of the case or an adjudication upon the merits and the issues must be tried to the same extent as though no temporary injunction had been applied for. (Walker Mem. Baptist Church v. Saunders, 285 N. Y. 462, 474.)
Although the complaint is sufficient on its face and the acts of the defendants appear to have infringed plaintiffs’ rights, the defendants’ organizational activities on behalf of the new union will not now be interfered with. The status quo should, as far as possible, be preserved until the final determination of this action. Accordingly an injunction pendente lite is granted to the extent that the defendants will be enjoined from using, transferring, paying out or otherwise distributing any of the funds, assets and property of the plaintiff Local 968, ILA, as they existed on the date of the purported disaffiliation and from using the name Local 968, ILA-AFL, or any similar name. (ILA’s constitution, art. XXV, § 1; Fitzgerald v. Abramson, 89 F. Supp. 504, 511.) Defendants are also directed to preserve the files, membership lists, record books, documents, etc. of the plaintiff local intact pending the outcome of this action. Upon the posting of a bond in the amount of $5,000 the local’s committee will be permitted to continue to manage the real estate referred to in the moving papers, depositing the rents in a separate bank account and disbursing such sums as may be necessary to maintain the property. Since there should be a speedy trial of this action, issue should be joined promptly. The case will be set down for trial on the Special Term, Part III Calendar, on May 3, 1954, subject to the approval of the Justice presiding there at that time. Settle orders on notice.