Miles F. McDonald, J.
This is an action for a permanent injunction to restrain the defendants from picketing the plaintiff’s place of business. On October 13, 1953 the defendant union began picketing the plaintiff’s place of business. Upon the commencement of this action on or about October 23, 1953 the picketing ceased. The action was instituted by way of service of an order to show cause and summons and complaint which was issued ex parte, containing a restraining clause. It appears from the evidence and it is undisputed, that upon service of this order to show cause the picketing ceased immediately. The complaint contains three causes of action. The first two causes of action seek money damages as a result of the defendant’s alleged actions. These were dismissed for a failure of proof at the close of the plaintiff’s case. The third cause of action seeks an injunction to restrain the defendant union from picketing the plaintiff’s premises on the grounds that (1) there is no labor dispute between plaintiff and its employees; (2) the picketing was carried on with false signs stating that the plaintiff’s employees were on strike, when, in fact, they were not; (3) that the picketing was to enforce the unlawful labor objective of having plaintiff sign a contract with defendant union recognizing it as the exclusive bargaining agent for plaintiff’s employees, when, in fact, the defendant union did not represent a majority of plaintiff’s employees; (4) that the defendant is using economic pressure on plaintiff to obtain its unlawful objective, threatening plaintiff’s employees and plaintiff’s customers, blocking the entrance to plaintiff’s premises, interfering with the supply of merchandise and materials. The answer of the defendants is in the nature of a general denial, together with affirmative defenses alleging that the plaintiff is guilty of unfair labor practices; that the controversy grows out of a labor dispute and that the injunctive relief demanded *528 in the complaint, if granted, would restrain defendant from the free exercise of the constitutional rights granted them by the 14th Amendment to the Constitution of the United States of America and by section 8 of article I of the Constitution of the State of New York.
The motion for a temporary injunction was referred to an Official Beferee, before whom a hearing was conducted on December 1 and 2, 1953. At the conclusion of the hearing, the Official Beferee rendered a decision in which he reviewed the testimony adduced at the hearing before bim and granted a temporary- injunction. The main basis for the granting of this temporary injunction was the fact that the Official Beferee came to the conclusion that there could be and was no lawful objective in the picketing where the union did not represent the employees and that no ‘ ‘ labor dispute ’ ’ within the meaning of section 876-a of the Civil Practice Act could arise. At the trial of this action, the plaintiff strenuously argued and urged upon this court that this court was in law bound by the findings of fact and conclusions of law of the learned Official Beferee. A ruling upon the motion for a temporary injunction is not the “ law of the case ”, either as to the facts or the law, so as to bind this court upon the trial for a permanent injunction (Walker Memorial Baptist Church v. Sanders, 285 N. Y. 462, 474). If the contrary were true such summary disposition would terminate the proceedings. Although this court has the highest respect for the learned Official Beferee and has given great weight to his determination, his decision was made prior to the determination in the Court of Appeals in Wood v. O’Grady (307 N. Y. 532) which this court believes is controlling in the case at bar. This court is bound to make its determination upon the basis of the credible evidence adduced at the trial and the law as it exists at the time of the trial.
The evidence adduced at the trial discloses that between October 13,1953 and October 23,1953 the premises of the plaintiff were picketed by the defendant union. Picketing was conducted peacefully, without force, intimidation or violence or disorder of any kind. There were no arrests or disturbances. The evidence further disclosed that the picketing ceased completely and at once upon the issuance of the order to show cause containing an ex parte restraint. The picket signs contained a legend to the effect that the plaintiff’s employees were on strike. It was conceded by the union at the trial that such legend was false. The union conceded at the outset of the trial that it never did and presently does not represent the employees. The union, however, contends that in law it had the right and *529 now has the right to picket the plaintiff’s place of business peaceably with signs stating that the picketing was for organizational purposes. That such right exists cannot be questioned (May’s Furs & Ready-to-Wear v. Bauer, 282 N. Y. 331, 339, 340; Exchange Bakery & Restaurant v. Rifkin, 245 N. Y. 260, 263; Wood v. O’Grady, supra). At the trial evidence was adduced by the plaintiff through the testimony of Samuel Hoffman and Hyman Hoffman, officers of the plaintiff corporation, that the president of the defendant union, one Jacob Engar, made demands upon the plaintiff to enter into a contract with the defendant union although admittedly the union did not represent the employees. The first of these demands was allegedly made at a coincidental meeting outside of a restaurant early on a morning in August, the date of which is not given.
The statement directly ascribed to the defendant Engar when the president of the plaintiff corporation asked the purpose that brought Engar to the neighborhood was '‘1 come to see you. I want to settle your shop.” That this conversation was a demand for a contract is the interpretation placed thereon by Hoffman, the president of plaintiff, though, when pressed, he stated that Engar said “ You have got to sign up with us,” and “You must sign up with us,” to which the plaintiff replied that if “he has the jurisdiction of my men I am willing to sign.” Without further discussion, they parted. The second alleged demand was again made on an unknown date in September, again at a coincidental meeting in the street. This time the alleged demand was couched in the following words: “ I came to you now. You have got to settle the shop, because we just finished with the Seven-Tip people with a strike and you are the next one,” to which the plaintiff’s president made a similar reply to that on the first occasion. Again the conversation ended without further discussion.
These demands were denied at the trial by the defendant Engar. It is upon this testimony, and on this testimony alone that the plaintiff bases its claim that the picketing was for the unlawful purpose of coercing plaintiff into signing an unlawful contract. Such evidence is certainly not of the type that would either compel or permit the court to exercise the drastic remedy of injunction that would deprive the defendant union of its fundamental right to peacefully picket for an otherwise legitimate purpose. Certainly it comes far below the standard required to successfully maintain the plaintiff’s burden of proof. The question is therefore presented whether or not the avowed purpose of the defendant’s organizational picketing is a legitimate labor objective.
*530 Although the union did not represent and does not represent the employees of the plaintiff corporation, nevertheless in law it has such an interest that it may picket the plaintiff’s place of business in order to induce its employees to join the union (Exchange Bakery & Restaurant v. Rifkin, supra; May’s Furs & Ready-to-Wear v. Bauer, supra). In May’s Furs & Ready-to-Wear v. Bauer (supra) the court stated (pp. 339-340): ‘ ‘ Although the members of the defendant union are not the employees of plaintiff employer, no less is their direct interest in the labor policy of an employer who is engaged in the same industry as they are. * # * It may be as interested in the wages of those who are not members, or in the conditions under which they work as in its own members because of the influence of one upon the other.”
In Exchange Bakery & Restaurant v. Rifkin (supra) the court stated as follows (p. 263): “Picketing without a strike is no more unlawful than a strike without picketing. Both are based upon a lawful purpose. Resulting injury is incidental and must be endured. Even if the end sought is lawful the means used must be also. ‘ Picketing ’ commits no evil. It may not be accompanied, however, by violence, trespass, threats or intimidation, express or implied. No crowds may be collected on or near the employer’s property. The free entrance of strangers, customers or employees may not be impeded. There may be no threats — statements oral or written, false in fact, yet tending to injure the employer’s business.”
In Wood v. O’Grady (supra, p. 535) the court stated: “ Section 876-a of the Civil Practice Act (L. 1935, ch. 477) declares, as a matter of State policy, that injunctions may not issue ‘ in any case involving or growing out of a labor dispute ’ except after a hearing and after a finding of fact in the language of the statute that ‘ unlawful acts have been * * * threatened or committed ’ which ‘ will be executed or continued unless restrained ’ (subd. 1, par.' [a]) causing ‘ substantial and irreparable injury to complainant’s property ’ (subd. 1, par. [b]). Even then, the restraint must not interfere with certain recognized fights, particularly the publication of the facts in any dispute by picketing not involving ‘ fraud, violence or breach of the peace ’ (subd. 1, par. [f], cl. [5]). The Legislature, in carefully chosen language, defined a labor dispute as one between ‘ persons who are engaged in the same industry, trade, craft or occupation ’ (subd. 10, pars, [a], [b]) which ‘ includes any controversy concerning terms and conditions of employment * * * or representation * * * or concerning employment relations, or any other controversy arising out of the *531 respective interests of employer and employee, regardless of whether or not the disputants stand in the relation of employer and employee ’ (subd. 10, par. [c]).
‘' The labor policy thus embedded in our statutory law stated nothing new or revolutionary. Over a long period of years this court has painstakingly evolved a pattern of decisional law repudiating the use of an injunction to restrain peaceful picketing in labor disputes which is too well known to warrant repeating here [citing cases].” There therefore can be no doubt that in this case a labor dispute exists.
The record in this case discloses that the temporary injunction issued has been in force since December, 1953 for a period of more than two years. The plaintiff has, in effect, had the benefit of a sweeping injunction, far in excess of the six-month period permitted upon the granting of a permanent injunction. (Baillis v. Fuchs, 283 N. Y. 133, 137, 138; Civ. Prac. Act, § 876-a, subd. 8.) And to further extend it on broad terms would place a premium on the plaintiff’s failure to promptly bring the issues to trial.
The record also is lacking in evidence which would support the finding that the plaintiff has suffered “ substantial and irreparable injury.” The incidents concerning which testimony was adduced are no more than the “ personal inconvenience ” referred to in Wood v. O’Grady (supra).
This court has had the opportunity to observe the witnesses at the trial and to observe their demeanor. In the last analysis, it is upon the trial court that the burden of deciding the question of the credibility of the witness falls. After carefully considering all of the evidence in this case, and having had the opportunity to observe each of the witnesses as they testified, both on direct and cross-examination, this court finds as a fact that no demand was made upon the plaintiff by the defendant union that the plaintiff enter into a contract with it. The court further finds from the credible evidence in the case that the picketing was peaceful and without disturbance of any kind and that the picketing was not directed against the plaintiff to induce it to recognize the union as the bargaining agent for the plaintiff’s employees. The court further finds from the credible evidence that the picketing was not done for the purpose of bringing economic pressure to bear upon the plaintiff in order to compel its employees to join the union. The court further finds that the actual purpose of the picketing was for the purpose of organizing the employees of the plaintiff corporation and for none other.
*532 Such an objective has long been deemed lawful and legitimate in this State (Civ. Prac. Act, § 876-a, subd. 10; Exchange Bakery & Restaurant v. Rifkin, supra; May’s Furs & Ready-to-Wear v. Bauer, supra).
In Wise Shoe Co. v. Lowenthal (266 N. Y. 264, 269) the Court of Appeals stated: “We have never gone so far as to hold that wherever acts or words went beyond peaceful picketing, all picketing was to be enjoined. If so there would have been no need for the many modifications of injunction judgments which this court has made. It all depends upon the danger to be reasonably anticipated.”
Despite the foregoing, the court cannot condone the utilization of false legends upon the placards of the pickets indicating that the employees of the plaintiff are on strike. Upon this issue alone the plaintiff is entitled to injunctive relief to the extent that the defendants are enjoined from representing to the public or to the members of the union, either by signs or other means of communication, that the plaintiff’s employees are on strike and shall indicate that the picketing is for organizational purposes. Settle judgment in accordance with the terms of this decision.