Matter of Briggs v Noble (2004 NY Slip Op 50244(U))

[*1]

Matter of Briggs v Noble

2004 NY Slip Op 50244(U)

Decided on March 5, 2004

Supreme Court, Erie County,

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 5, 2004

Supreme Court, Erie County,
In the Matter of the Application under CPLR Article 78 of A. J. BRIGGS, individually, as a member and as Chairman of the Deacon Board of Cedar Grove Missionary Baptist Church, and, ROOSEVELT FERGUSON, HILLARD WILLIAMS, CHARLES HUGG and JUDGE NANCE, all individually, and as Members and Deacons of Cedar Grove Missionary Baptist Church, Petitioners,
against
WILLIS NOBLE, Chairman of the Board of Trustees of Assigned Justice Cedar Grove Missionary Baptist Church, and TROY SMITH, JOAN GIBSON, NATHAN HARRIS, DONNA THOMAS AND PATRICIA EVERETT, as Trustees of the Cedar Grove Missionary Baptist Church, REV. MELVIN BROOKS and HSBC BANK, U.S.A., Respondents.
INDEX NO. 2003/6591

DAVID J. SEEGER, ESQ. and LEIGH E. ANDERSON, ESQ.
Attorneys for Petitioners
LAW OFFICE OF R. LYNETTE COPELAND & ASSOCIATES
Attorneys for Respondents
By R. Lynette Copeland, Esq.

JOHN P. LANE, J.
In this combined action and proceeding pursuant to CPLR 3001 and article 78 and the Religious Corporations Law, petitioners seek a judgment declaring that Adel McTier, Olivia Starks, Jerry Daniels, Patricia Everett and Troy Smith are the sole trustees as holdovers of Cedar Grove Missionary Baptist Church and that petitioners continue in office as members of its board of deacons. Petitioners concede they seek no relief against respondent HSBC Bank, U.S.A. Respondents contend that petitioners were excommunicated from Cedar Grove Missionary Baptist Church and have no standing to prosecute this action and proceeding, and the Court lacks [*2]subject matter jurisdiction to entertain it or grant the relief sought by petitioners. The Court sua sponte dismisses the petition as to HSBC Bank, U.S.A. For the reasons that follow, petitioners have standing to prosecute this action and proceeding and the relief sought by them against the remaining respondents is granted.
Cedar Grove Missionary Baptist Church was founded in 1955 and incorporated pursuant to article 7 of the Religious Corporations Law on October 24, 1958. The certificate of incorporation provides that there shall be three trustees of the church to hold terms staggered over a three-year period. Religious Corporations Law §131 provides that an incorporated Baptist church shall have 3, 6, 9, 12 or 18 trustees. Initially, of the number of trustees fixed, one-third hold office until the next annual election, one-third until the second annual election and one-third until the third annual election of trustees thereafter, "or until the respective successors of such trustees shall be elected" (Religious Corporations Law §131). Vacancies on the board of trustees may be filled by the remaining trustees until the next annual corporate meeting of the church, at which time vacancies shall be filled for the unexpired term (Religious Corporations Law §138). An incorporated Baptist church may, at an annual corporate meeting, change the number of its trustees to not less than three, nor more than eighteen, or classify them so that the terms of one-third expire each year, provided that notice of the intended change or classification is included in the notice of the annual corporate meeting (Religious Corporations Law §136). While there is no evidence that the church voted at an annual meeting to increase the number of trustees beyond three, or alter the term of the trustees, it is clear that for many years more than three trustees were elected annually to one-year terms.
Cedar Grove Missionary Baptist Church adopted a constitution and by-laws in 1972 which, as relevant to the issues of this matter, provides as follows. Termination of membership in the church occurs upon death, by expulsion or by issuance of a letter to a member in good standing who desires to terminate his or her relationship with it (Exh. 3, p. 13). Any person against whom charges have been preferred for conduct unbecoming a member of the church shall be entitled to a hearing by a committee of deacons, which shall make its recommendations to the board of deacons. If the matter is not satisfactorily disposed by the board of deacons, it shall be brought to a meeting of the church for final disposition (id. p. 15, 16). Deacons are elected to serve indefinitely (id. p. 20). The authority of the trustees is limited to the care of church property and its financial affairs (id. p. 21).
According to Charlie Polk, Jr., a long-time member of the church and chairman of its board of trustees for many years, the church routinely elected officers, trustees and deacons annually until respondent Melvin Brooks was named pastor. Polk testified that he resigned from the board of trustees in late 2000. At that time, the others acting as trustees were respondents Willis Noble, Troy Smith, Olivia Starks, Jerry Daniels, Adel McTier and Patricia Everett. After Polk resigned from the board of trustees, Pastor Brooks appointed respondent Willis Noble as chairman of the
board of trustees. The congregation itself did not vote on that appointment, and the remaining trustees had not elected a successor to Polk.
Polk also testified that in March 2003 he received a letter from respondent's attorney excommunicating him from the church. The parties have agreed that the same form of letter was [*3]sent to petitioners and 18 of their supporters (see Exh. 9, 10). Each recipient was instructed to stay off the premises of the church and that their presence would constitute trespassing, which might result in the police being called. The board of deacons had existed since 1966 until early in 2003, when respondent Brooks announced that there would be no more deacons.
Adel McTier, Jr., testified that he too received a letter terminating his membership in the church. At that time, he had been a member of the board of trustees since the late 1970's or early 1980's. He never resigned the office and the congregation did not remove him. The last annual meeting he attended was in 1999. After respondent Brooks became pastor, no annual meetings were held and no elections of officers took place.
Olivia Starks testified that she had been a trustee and the financial secretary of the church for many years until she was told by respondent Brooks that she was being replaced. She never resigned her position as financial secretary or as a member of the board of trustees. She continued to attend the church until March 2003 when she received a letter telling her she was excommunicated and not allowed on the premises. The congregation did vote to abolish the office of deacon at a service held in February 2003. However, no notice was given that such a vote would be considered.
Respondent Willis Noble also testified that trustees were elected annually. He had served as a trustee off and on for a number of years and returned to the board in 1990 after a few years'
absence. In July 2003, he was elected for the first time by the congregation as a trustee. According to him, the board of deacons was abolished upon respondent Brooks' recommendation in February
2003 by a voice vote of the congregation. There was no notice given that such action would be taken on that day.
Respondent Melvin Brooks testified that after he became pastor, a meeting was held in December 2000. However, it was not held in a manner in which the congregation was accustomed to for annual meetings. No notice was given and no minutes of the meeting were kept. The next meeting was held in July 2003. Pastor Brooks acknowledged that he recommended that the board of deacons be abolished. According to his view, the pastor is in charge of all church activities. When he recommended that the position of deacon be abolished, he intended that a training course be established and he would later recommend new deacons. No prior notice to the congregation or the persons who were serving as deacons was provided and no new deacons have been appointed. According to respondent Brooks, he met with the trustees on March 18, 2003, following which respondents' attorney was instructed to write the letters of excommuncation. He stated that the reference to the governing body of the church in those letters refers to him and the board of trustees. The meeting of July 23, 2003, was called by notice given from the pulpit for several weeks. No notices were mailed to members of the church. At that time, 23 people had been
excommunicated and were not permitted on the premises. The reason those members were expelled from the church was that they had attempted to interfere with the church's relationship with its bank.
In their summation, respondents conceded that each of the holdover trustees identified by [*4]petitioners was elected in 1999. There had been no subsequent general meetings of the church until July 2003.
Petitioners contend that the excommunication process was not lawful and those members who had been expelled in March 2003 should have been allowed to participate in the July 2003 annual meeting at which new trustees were elected. Procedures established in the constitution and bylaws for excommunication were not followed. The excommunicated members were excluded from the meeting. They were not given notice of the July 2003 meeting and they were threatened with criminal prosecution if they came on the church property. The Religious Corporations Law requires that the board of trustees, not the pastor, call annual and other meetings of the corporation (Religious Corporations Law §133). As the meeting of July 2003 was a nullity, the Court should declare who are the members of the board of trustees.
"[R]eligious freedom encompasses the 'power [of religious bodies] to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine' " (Serbian Orthodox Diocese v Milivojevich, 426 US 696, 721-722, quoting Kedroff v St. Nicholas Cathedral, 344 US 94, 116). However, this case does not involve questions of discipline, faith,
or ecclesiastical rule. If it did, the dispute between the parties would be beyond the subject matter jurisdiction of this Court.
Petitioners seek to enforce only their civil or secular rights as members of the church and as duly selected members of its board of deacons (see Mays v Burrell, 124 AD2d 714). Thus, the dispute can be resolved through the application of neutral principles of law (see Park Slope Jewish Center v Congregation B'nai Jacob, 90 NY2d 517). Furthermore, the issues raised in this action and proceeding are narrowly circumscribed and differ substantially from those raised in Matter of Committee to Recall and Remove the Pastor of Cedar Grove Missionary Baptist Church v Melvin Brooks (Sup Ct, Erie County, Index No.1937/03), which involved continuing service by respondent Brooks, a matter beyond the jurisdiction of this Court (see Upstate N. Y. Synod of Evangelical Lutheran Church v Christ Evangelical Lutheran Church of Buffalo, 185 AD2d 693; Mays). It is well established that absent the invasion of civil or property rights, courts will not interfere concerning the internal affairs of a church (see Park Slope; Mays). Here petitioners have established that their civil rights as members and deacons of the church have been violated, and intervention by the court is therefore warranted (id.). Relying on the constitution and bylaws of the church as well as the Religious Corporations Law, petitioners seek to enforce their secular rights as duly chosen members of the board of deacons and members of the spiritual body of Cedar Grove Church (see Watson v Christie, 288 AD2d 29). Courts may focus on the language of such documents and that statute in determining whether the civil rights of petitioners have been impaired (See Trustees of the Diocese of Albany v Trinity Episcopal Church of Gloversville, 250 AD2d 282, 286). It is clear that petitioners' secular rights to have charges preferred and a trial before the members of the spiritual body, have been denied. Neither the trustees, whose jurisdiction is limited to temporal matters, nor respondent Brooks had authority to strip petitioners of these rights (see Watson; Religious Corporations Law §5). Rodyk v Ukrainian Autocephalic Orthodox Church of St. Volodimir (31 AD2d 659, affd 29 NY2d 989) upon which respondents rely, is not to the contrary. Rodyk, which involved expulsion of a member from a Baptist church, holds that a petitioner who has not exhausted available [*5]administrative remedies may not apply to the civil courts for redress. There were no administrative remedies available to petitioners here.
The minister of a Baptist church is an officer of the religious society of the church and is not an officer of the religious corporation (see Walker Memorial Baptist Church v Saunders, 285 NY 462, 472). All members of the spiritual body of a Baptist church are ipso facto entitled to voting rights in the religious corporation (id. at 473). Termination of membership in the religious society by excommunication must be by the religious body upon the recommendation of the board of deacons, and not by the religious corporation or its board of trustees as happened here (id.). It follows that the action taken by respondent Brooks and the trustees of the religious corporation in March 2003 excommunicating petitioners and others was contrary to law. The same is true of the action taken at the religious service in February 2003 to effectively abolish the board of deacons by removing all of its members, whose offices for an indefinite term are established by the constitution and bylaws of Cedar Grove Church. While the members of the church corporation have the authority to amend their constitution and bylaws, such action must be preceded by appropriate notice (Religious Corporations Law § 133). Since no notice was given before the February meeting, the action taken then is null and void. Thus, petitioners remain members of the board of deacons.
The proof presented establishes that in the late 1990's, there were eight trustees. Nathaniel Matthews, one of that number, ceased acting for health reasons. Polk resigned in late 2000. While respondent Noble acted as a trustee at the request of a former pastor, he testified he had never been elected to that office. The other members of the board of trustees at the time voted him in, but he was not elected at the next annual meeting or by the members of the church until July 2003. Thus, prior to the July 2003 meeting, there were only five duly elected members serving on the board of trustees: Adel McTier, Olivia Starks, Jerry McDaniel, Patricia Everett and Troy Smith.
There is no credible evidence that the July 2003 assembly of the congregation was an annual meeting properly called by the board of trustees. Moreover, petitioners and other members of the church, who had been illegally excommunicated, were excluded from participating under the threat of arrest. Thus, they were deprived of their secular right to vote in the election of new trustees. The July meeting was a nullity and as a consequence, the survivors of the last elected board of trustees remain in office until their successors are elected in accordance with the constitution and bylaws of Cedar Grove Missionary Baptist Church and the Religious Corporations Law. The board of trustees shall call an annual meeting to elect trustees and conduct such other business as may be appropriate within 60 days of the date of this decision and order. Respondents' motion to dismiss the petition and for sanctions is denied.
SO ORDERED.
Dated: Buffalo, New York
 March 5, 2004
 John P. Lane, J.S.C.
Decision Date: March 05, 2004