FRANCES McKENDRY, Plaintiff, *v.* JOHN McKENDRY, Defendant.

Supreme Court, Equity Term, Monroe County, November 16, 1951.

*Percival W. Gillette* for plaintiff.

*William L. Clay* for defendant.

O'BRIEN, J. Plaintiff asks for a judgment of separation based on defendant's abandonment of her and his failure to support her. The complaint alleges that both plaintiff and defendant, at the time of the commencement of the action and for some years prior thereto, were residents of the State of New York. The amended answer specifically admits that plaintiff is a resident of New York. It fails to admit but does not expressly deny that defendant was and is such resident.

Since the marriage of the parties (May 9, 1928) occurred in the town of Pittsford in the State of New York and the plaintiff concededly was a resident of New York State when the action was commenced such action for separation was maintainable here. (Civ. Prac. Act, § 1165-a.)

Plaintiff and defendant were residents of New York State for most of their married life. There was a period of about one and one half years (ending in May, 1928) during which they were physically present in Florida. Whether during that period the State of Florida or New York State was their domicile it is not now necessary to determine. In May, 1948, they returned to New York State and took up quarters at the home of plaintiff's sister on Colebourne Road, Rochester, New York. Plaintiff has remained at that location in this State ever since. Defendant left this State in January, 1950, and having arrived in Florida claims and asserts that Florida is his residence and has been so at least since January, 1950.

The merits of the plaintiff's claim on which much evidence has been heard are soon determined. For some years these two parties had become less and less congenial and compatible with each other. It is not necessary at this time to determine the underlying cause or reason and indeed the court is not sure that it has sufficient insight to arrive at such a determination. Neither such incompatibility, however, nor any of the incidents related at the trial were sufficient to justify a separation between them. In this connection the court declines to find as requested by the defendant that plaintiff was guilty of abnormal sex conduct or sex perversion. On this phase of the case we con-

clude that the defendant has not established this charge which is alleged as a separate defense in the defendant's "Further Amended Answer".

As has been said the plaintiff remained in the Colebourne Road house ever since arriving there in May, 1948. The defendant left that home in September, 1948. He contends that the quarters there provided for him were not comfortable. This may well be the truth. When he left the defendant secured an apartment on Monroe Avenue in the same city. From that time on husband and wife continued to see each other at intervals but their visits became less frequent. They finally had a discussion in the fall of 1949. It was about this time the plaintiff gave the defendant his camera which he had requested and he claims that she told him not to come back. I do not believe nor accept this statement as true.

During the period from September, 1948, when the defendant left the Colebourne Road house to the time in January, 1950, when he left the State of New York and journeyed to Florida I find that he never offered to provide a home for the plaintiff and himself although she requested him to do so. If conditions in the Colebourne Road home were unacceptable to him it was his duty to provide a separate establishment where he and the plaintiff could live together. Sometime in advance of his journey to Florida in January, 1950, the defendant told plaintiff that he was going away and "would establish a divorce". It is noted that he did not invite the plaintiff to accompany him to Florida nor even discuss with her that possibility.

The court is satisfied that the defendant was bored with the plaintiff's society and tired of her and the responsibility which married life involved and that when he left the Colebourne Road house in September, 1948, he abandoned the plaintiff with the intention of never returning to her and has not since supported her. I do not find any misconduct on the part of the wife which justified such act on the part of the defendant.

On the showing which plaintiff has made here she would clearly be entitled to a judgment for separation with appropriate provisions for her support provided this court had power to grant such relief.

The husband contends that this court is precluded from granting affirmative relief to the wife by reason of the fact that he secured a divorce in the State of Florida in an action in which he was plaintiff and, which, so he claims dissolves the marriage between the parties and is entitled to full faith and credit and recognition in the State of New York.

For a consideration of the problems which are raised by this contention some recital of some of the proceedings which have occurred in this action preceding the trial may be appropriate.

Beginning in the month of January, after the husband left New York State discussions occurred between attorney William L. Clay of New York State who represented the husband and attorney Percival W. Gillette whom the wife had retained as her counsel. These conferences were not productive of any result.

In February, 1950, there was correspondence between Mr. Gillette representing the wife and attorney John G. Simms in Miami, Florida, representing the husband. Apparently no agreement was reached as a result of this correspondence. On April 27, 1950, the plaintiff verified a complaint in the above-entitled action for separation. Thereafter an order of sequestration was made. Attempts to serve the summons upon the defendant personally in Florida were made and failed. An order was made on June 6, 1950, authorizing service of the summons by publication and publication was immediately commenced. On June 5, 1950, the husband's attorney in Miami, Florida, mailed to the wife in New York State a copy of the husband's bill of complaint for divorce entitled in the Circuit Court of the Eleventh Judicial Circuit of Florida in and for Dade County. She received the summons and the accompanying notice on June 7th.

The defendant contends that since his bill of complaint for divorce in Florida was verified on May 29, 1950, and a copy of it mailed on June 5, 1950, his action was first commenced. The plaintiff's complaint in the New York State separation action was verified on April 27, 1950, but publication, authorized on June 6, 1950, was not complete for a considerable time thereafter. I hold that the fact that the Florida divorce action was first commenced, if it be a fact, is not controlling on the question as to whether the resulting decree in the Florida action will be recognized here. It is noted that the defendant has appeared generally in the separation action by attorney and was personally present in court at the time the action was tried. There was an informal appearance on behalf of defendant as early as June 22, 1950, at which time Messrs. Sutherland and Sutherland, attorneys in Rochester, New York, wrote a letter to plaintiff's attorney. In this letter reference was made to the pending New York separation action and the letter stated that such attorneys would appear for the defendant in the action. They made such formal appearance on or about September 13,

1950. Later, approximately in October, 1950, attorney William L. Clay was substituted for Sutherland and Sutherland as attorney for the defendant.

On June 27, 1950, on the application of the plaintiff an order was made by Honorable H. DOUGLASS VAN DUSER, a Justice of this court, returnable August 14, 1950, ordering the defendant to show cause why he should not be enjoined from continuing with the Florida divorce action. *This order stayed the continuation of the proceedings until the motion should be determined.* The order was duly served upon the defendant in the manner therein provided. The defendant received the order and had knowledge of its contents.

It will be recalled that the order to show cause why an injunction should not issue against defendant's prosecution of the Florida divorce action contained a temporary injunction effective until the hearing and determination of the application. Argument of the application was adjourned from time to time. It was argued on November 29, 1950, before HON. FRED D. CRIBB, then a Justice of this court. Defendant appeared on such motion by his attorney, Mr. Clay. Justice CRIBB made no decision prior to December 31, 1950, on which date he retired from office. Apparently Judge CRIBB believed the action had been settled. The undetermined motion was submitted to Honorable CARROLL M. ROBERTS, a Justice of this court, at his March Special Term and he made a decision on April 30, 1951, granting the application and restraining the defendant from taking any further steps or proceedings in the divorce action in Florida until the trial and determination of the present New York separation action. A formal order to that effect was made on May 7, 1951. Meanwhile, on March 12, 1951, the defendant in the Circuit Court of the Eleventh Judicial Circuit of Florida in and for Dade County secured a decree which upon its face dissolves the bonds of matrimony between the plaintiff and defendant in this action. The wife, here plaintiff, did not appear in the Florida action.

No proof is offered by the plaintiff that a certified copy or indeed any copy of the order to show cause granted June 27, 1950, which contained the restraining order was ever served personally upon the defendant. A certified copy of it was actually received by defendant's attorney John G. Simms, Esq., at Miami, Florida, and he is the attorney who acted for the defendant husband in the procuring of the Florida divorce decree. Also, a certified copy of the order containing the temporary injunction was served upon the defendant by mail.

Moreover, on the argument of the motion (November 29, 1950) to make permanent the restraining order of June 27, 1950, the defendant read in opposition and filed with the court an affidavit verified November 25, 1950, made by the defendant himself. In his affidavit the defendant specifically refers to the order granted June 27, 1950, and in his affidavit goes on to state regarding the same *" which order to show cause further stays any further steps being taken in the Florida action until the hearing and determination of this motion."*

Accordingly it stands undisputed that the defendant knew and understood the provisions of the order which expressly forbade him to proceed further in the Florida action until the New York State court had heard the evidence in the separation action and had made its decision thereon. The granting of such an order by our courts was warranted on the showing made by plaintiff (Civ. Prac. Act, § 878; *Garvin* v. *Garvin,* 302 N. Y. 96).

If the New York State courts are bound to recognize this Florida decree as binding under *Williams* v. *North Carolina* (317 U. S. 287) until the plaintiff here by affirmative proof establishes the fact that the husband's residence in Florida was sham then this court lacks the power to grant a separation and the power to compel the defendant to contribute to the plaintiff's support. (*Lynn* v. *Lynn,* 302 N. Y. 193, 203; *Matter of Ensign,* 103 N. Y. 284; *Garvin* v. *Garvin,* 302 N. Y. 96, *supra.*) If the defendant had obeyed the restraining order granted by this court a decree made here in this action granting a separation to the plaintiff wife with alimony provisions would remain unaffected, as to the support provisions, by any subsequent decree of the Florida court dissolving the marriage. This would be so even if such Florida decree was in fact valid and entitled to recognition in this State. (*Estin* v. *Estin,* 296 N. Y. 308; *Kreiger* v. *Kreiger,* 297 N. Y. 530; *Lynn* v. *Lynn,* 302 N. Y. 193, *supra.*) In the *Garvin* case (302 N. Y. 96, *supra*) our Court of Appeals declined to follow as a precedent the *Goldstein* case (*Goldstein* v. *Goldstein,* 283 N. Y. 146) and held that an injunction should be granted in a proper case restraining a spouse, defendant in a New York State separation action, from proceeding in a sister State with the prosecution of his divorce action until the New York State separation action had been heard and decided. This ruling was made in spite of the contention of the plaintiff wife in the *Garvin* case that the residence of the defendant husband whose proceedings she sought to enjoin, was not genuine and bona fide.

In our case there has not been tried or determined the issue as to whether or not the defendant husband was in fact a bona fide resident of Florida at the time the Florida court entertained jurisdiction. It is assumed that evidence on that subject can still be heard and the issue determined if it prove necessary. (*Williams* v. *North Carolina*, 325 U. S. 226.) Accordingly the proofs in this case could be reopened and additional testimony received from both parties and their witnesses on the issue of the domicile of the husband at the time the Florida divorce action was commenced and at the time the decree was granted.

Another possible alternative is to determine now without such proof whether or not a husband who is a defendant in a New York separation action may successfully defy the process of this court by disobeying an injunction and then come into this court and claim the privilege of asserting here that as a fruit or reward of his disobedience he has secured a foreign decree that bars the plaintiff from maintaining the New York action.

The Florida decree was granted on or about March 12, 1951, a considerable time after the commencement of the New York State separation action. · To assert a defense based on this decree the defendant amended his answer at the opening of the trial. He had no absolute and unqualified right to such an amendment (Civ. Prac. Act, § 245). The amendment was allowed. Subsequent to this amendment the proofs were received including the exhibits. They disclosed, particularly exhibit 5, the fact that the defendant had been stayed from proceeding in the Florida action, that he had direct and personal knowledge of the fact that he was stayed by the order of this court, and finally the fact that he deliberately disobeyed the stay. Near the close of the evidence plaintiff's counsel moved to strike out this amendment to the answer which alleged the Florida divorce judgment as a complete defense to the plaintiff's action. On this motion the court reserved decision. This motion is now granted and this defense is stricken with an exception to the defendant.

On the record here it is clear that the defendant had actual knowledge of the injunction order which restrained his prosecution of the Florida divorce action and disobeyed it. For such disobedience, which I find to have been intentional and willful, he is punishable as and for a contempt. It is no answer for the defendant to assert that proof is lacking that a certified copy of the order was served upon him personally, since he had actual knowledge of its contents. It has frequently been held that personal service of an injunction order is not a prerequisite

to punishment for contempt provided he who disobeyed it had actual knowledge of its existence and its contents. (*People ex rel. Stearns* v. *Marr*, 181 N. Y. 463; *Matter of Lennon*, 166 U. S. 548, 554; *Daly* v. *Amberg*, 126 N. Y. 490, 496; *Matter of N. Y. State Labor Relations Bd.* v. *Wheeler*, 177 Misc. 945; *United States* v. *Sumner*, 127 Misc. 907.)

The Supreme Court of this State has inherent power to enforce its mandates and to see to it that proper respect is paid to them and this is not dependent upon express statutory authority. (*Brinkley* v. *Brinkley*, 47 N. Y. 40; *Walker* v. *Walker*, 82 N. Y. 260, 264; *De Lancey* v. *Piepgras*, 141 N. Y. 88, 96; *Hovey* v. *Elliott*, 145 N. Y. 126, 138.)

It is doubtless true that to strike out the defendant's answer and summarily grant judgment *pro confesso* to the plaintiff because of the defendant's disobedience would violate the Fourteenth Amendment to the Constitution of the United States. (See *Hovey* v. *Elliott*, 167 U. S. 409.) However to strike out or refuse to allow the precise amendment proposed at the opening of the court namely, an assertion of the Florida divorce decree as a defense would rob defendant of no constitutional right and would seem to be a proper and appropriate punishment for his disobedience of the injunction order of this court. (*Moore* v. *Jackson Tube Co.*, 86 N. Y. S. 2d 488; *Feingold* v. *Walworth Bros*, 238 N. Y. 446.)

Moreover, since defendant's application for permission to serve what in effect was a supplemental answer was addressed to the discretion of the court and asked its favor, a denial of such application is permissible and proper. (*Palmer* v. *Palmer*, 184 Misc. 291; *Hovey* v. *Elliott*, 167 U. S. 409, *supra*.)

To permit the defendant to assert as a bar to this action the procurement of the Florida divorce would allow him to take advantage of his own wrong, to profit by his own iniquity. (*Riggs* v. *Palmer*, 115 N. Y. 506; *Imperator Realty Co.* v. *Tull*, 228 N. Y. 447.)

The motion of the defendant for judgment is denied, with an exception to the defendant.

The motion of the plaintiff for judgment is granted, with costs, and plaintiff is awarded a decree separating her from the bed and board of defendant because of his abandonment of her and requiring the defendant out of his property and earnings to contribute to her support the sum of $30 a week, the first payment to be made on or about November 22, 1951, and weekly thereafter until further order of this court.