Bernard S. Meter, J.
To protect the interests of the child of the marriage of the parties to this separation action, this decision will be published under the above fictitious names and, pursuant to rule 278 of the Buies of Civil Practice, the file will be ordered sealed, to be exhibited only to the parties to the action or someone interested on order of the court.
Plaintiff wife prior to December 16, 1950 was an unmarried American civilian employed in Germany; defendant husband, an unmarried Army officer stationed there. Having met in 1949, they had thereafter attended various social functions together, and had had sexual relations a number of times before, in August, 1950, plaintiff discovered that she was pregnant. Soon thereafter plaintiff resigned her job and went to live with friends in another city in Germany. Confronted with plaintiff’s situation, defendant refused to marry her, and only after the intervention of an Army chaplain and after having made clear that he would not live with plaintiff and that he was marrying her only for the sake of the child and to spare plaintiff disgrace did he consent to do so. On December 16, 1950 the parties were married in the presence of the friends with whom plaintiff was living, went with those friends to a hotel for dinner and then parted. Never after the marriage did they live together or have sexual relations; in fact only once thereafter, on the day plaintiff left with her friends to live in France, did they- see each other. On March 3, 1951 the child was born in France. In February,-1951 an Army allotment of $105 per month to plaintiff was begun. The allotment was increased in October, 1951 to $225 per month and continued at that figure until increased in 1956 after the order, hereafter referred to, made by Mr. Justice Christ. Plaintiff remained in France until her return, on Army travel orders issued to her as the wife of defendant, to New York on March 3, 1952. The orders showed as the address to which she was returning a Nassau County address *346 at which plaintiff had resided for 33 years before she went to Grermany. In returning to her former home she was simply returning home; she never asked that defendant live with her after the ceremony and he never asked her to do so.
In May, 1956 plaintiff received in the mail a copy of a complaint reciting that defendant resided in Kentucky, that plaintiff was a nonresident, that the parties had resided apart continuously for more than five years, and praying for an absolute divorce. By summons and complaint dated June 1, 1956 and served on defendant within the State of New York on June 4, 1956, plaintiff began this action for a separation based on abandonment and nonsupport, and for a permanent injunction against defendant proceeding with his Kentucky action, plaintiff alleging that he was in fact a resident of Nassau County. Defendant who had resided with his parents in Nassau County prior to his entry into military service in 1941, was present in New York at the time he was served, on leave because of the recent death of his father. Plaintiff never appeared in the Kentucky action. Defendant, through a mail submission by his Kentucky attorney, contested the jurisdiction of this court to entertain plaintiff’s action, and pleaded the prior action pending in Kentucky. Mr. Justice Christ, finding “ that the plaintiff has shown sufficient to entitle her to the relief sought by way of temporary injunction ’ ’ and noting that 1 ‘ The final determination of this question will have to await a trial ’ ’ entered an order on July 5, 1956 enjoining defendant from proceeding in his Kentucky action, awarding plaintiff temporary alimony of $250 per month and a counsel fee of $400. The order was brought to defendant’s attention both by attempted service upon him by a Deputy Sheriff in Kentucky and through Army channels, and in September, 1956, the monthly allotment to plaintiff was increased to $250, where it remained until terminated in October, 1958.
Notwithstanding the temporary injunction, defendant proceeded with the Kentucky action and on October 11, 1958 was awarded an absolute divorce by the Kentucky court. Defendant’s answer sets up the Kentucky decree as an affirmative defense. Plaintiff argues, however, that the Kentucky court was obliged to give full faith and credit to the July 5, 1956 temporary injunction order, and that the Kentucky decree having been obtained in violation of that order may not be received .in this action. The argument does not withstand analysis, however.
The Full Faith and Credit Clause requires that a State give to the decree or judgment of another State only such force and effect as it has in the State in which it was rendered (Matter of *347 Kelly, 285 N. Y. 139, 145; Langerman v. Langerman, 303 N. Y. 465, 473; Parker v. Hoefer, 2 N Y 2d 612, 616, cert. denied 355 U. S. 833; U. S. Code, tit. 28, § 1738). It has long been the settled law of New York that the “ granting or refusal of a temporary injunction does not constitute the law of the case or an adjudication on the merits, and the issues must be tried to the same extent as though no temporary injunction had been applied for ” (Walker Mem. Baptist Church v. Saunders, 285 N. Y. 462, 474; Federal Waste Paper Corp. v. Garment Center Capitol, 268 App. Div. 230, affd. 294 N. Y. 714; Bond Stores v. Turner, 262 App. Div. 417; 10 Carmody-Wait, New York Practice, Injunctions, § 25, p. 558). Further an order restraining defendant pendente lite from instituting or continuing with a foreign action does not restrain the foreign court, but acts solely on the defendant. (McKendry v. McKendry, 280 App. Div. 440.) It follows that the Full Faith and Credit Clause can never be a bar to the trial in a foreign court of the facts on which a New York temporary injunction is based. (Restatement, Conflict of Laws, § 450, Comment b; James v. Grand Trunk Western R. R. Co., 14 Ill. 2d 356, cert. denied 358 U. S. 915.)
Nor does defendant’s violation of the injunction order render the Kentucky decree ineffectual, if his Kentucky domicile was bona fide. The consequence of a violation of a restraining order was deliberately left open in Edell v. Edell (284 App. Div. 758) and McKendry v. McKendry (supra). While Palmer v. Palmer (184 Misc. 291) refused to permit defendant to serve a supplemental answer setting up a foreign divorce obtained in violation of a restraining order and Edell v. Edell (6 Misc 2d 631) refused to permit plaintiff husband to discontinae a New York action after he obtained a foreign divorce in violation of the order which the Appellate Division had previously upheld, both can be distinguished from the present case, the Palmer case on the court’s finding (p. 292) that “ defendant herein was a resident of this State when the action was commenced” and the Edell case because plaintiff, having initiated the New York divorce action, thereafter went to Florida. If the domicile of a defendant has actually been removed to a foreign State, our courts may not interfere with his prosecution of a divorce action there (Hammer v. Hammer, 278 App. Div. 396, 399, affd. 303 N. Y. 481; McDonald v. McDonald, 182 Misc. 1006; Bauer v. Bauer, 16 Misc 2d 560; 54 A. L. R. 2d 1242, 1250, and cases cited in that annotation) and consequently will not issue a judgment restraining defendant from ever thereafter prosecuting an action for divorce in any State other than New York (Sivakoff v. Sivakoff, 280 App. Div. 106; Sandhouse v. Sandhouse, 12 Misc *348 2d 308). That being so, a temporary injunction order granted to “maintain the status quo until the bona fides of the husband’s alleged [foreign] domicile is determined” (Hammer v. Hammer, 278 App. Div. 396-399, affd. 303 N. Y. 481, supra) must fall when the domicile is shown to be bona fide. (See Weisman v. Weisman, 133 N. Y. S. 2d 701.)
But, it is argued, solicitude for the protection of marital rights of New York citizens and particularly the desire to guard the nonappearing spouse against “ the heavy burden of striking down the prima facie effect of the foreign court’s finding of residence ” (Garvin v. Garvin, 302 N. Y. 96, 102 ; see Rosenbaum v. Rosenbaum, 309 N. Y. 371) mandate that, at very least, a defendant who violates a temporary restraining order bear the burden of proving his foreign domicile. It is doubtful that the reasoning of the Special Term and Trial Term Justices in Palmer v. Palmer (supra); Edell v. Edell (6 Misc 2d 631, supra) and McKendry v. McKendry (202 Misc. 312, 318-319, revd. on another ground 280 App. Div. 440) if accepted by the appellate courts, will be extended to include reversal of the procedural rule which normally imposes on plaintiff the burden of proving the elements of an action for a permanent injunction (see dissent of Chief Judge Conway in Rosenbaum v. Rosenbaum, supra). If not, the instant plaintiff’s failure to introduce on her direct case any proof concerning defendant’s domicile requires dismissal of the action for a permanent injunction (Moscowitz v. Moscowitz, 256 App. Div. 955) and that dismissal carries with it the temporary injunction.
Whatever may have been the procedural result had plaintiff, having obtained personal jurisdiction over defendant, pressed her demand for a permanent injunction to a conclusion before the Kentucky divorce decree was rendered, the granting of that decree raised a constitutional bar to the burden of proof rule for which plaintiff contends. As a matter of constitutional law “ The Full Faith and Credit Clause placed the Pennsylvania [forum] courts under duty to accord prima facie validity to the Nevada [foreign State] decree. The burden is on the litigant who would escape the operation of a judgment decreed in another State ” (Esenwein v. Commonwealth, 325 U. S. 279, 280; accord: Williams v. North Carolina, 325 U. S. 226, 234; Cook v. Cook, 342 U. S. 126; Sutton v. Leib, 342 U. S. 402; Rosenbaum v. Rosenbaum, supra; p. 375; Matter of Franklin v. Franklin, 295 N. Y. 431; Mascioli v. Mascioli, 1 A D 2d 779). The answer to the question left unanswered by the Appellate Division in McKendry v. McKendry (supra) is to be found in that constitutional rule; the Full Faith and Credit Clause *349 required acceptance in evidence of the Kentucky divorce decree offered by defendant in substantiation of his affirmative defense and placed upon plaintiff as ‘ ‘ the litigant who would escape the operation ” of that judgment the burden of showing that the decree was jurisdictionally defective for lack of domicile and therefore not entitled to full faith and credit.
In the instant case not only has plaintiff not sustained that burden but also it might be held that defendant has sustained the burden which plaintiff seeks to impose on him. The only evidence relating to defendant’s domicile -was introduced on defendant’s case through defendant himself. From that evidence the court finds that defendant was domiciled in Nassau County while in college, that in 1941 after college ended he began his military career at Fort Knox, Kentucky; that he was separated from service early in 1947, in the State of Washington, and spent the better portion of his time before he obtained his regular army commission in July, 1947 in Louisville and Stratford, Kentucky, although he did return to Nassau County to visit his parents; that after he obtained the commission he was stationed at Fort Knox for more than a year; that in August, 1948 he left the United States for Germany; that when in April, 1956 he instituted the Kentucky action for divorce he was living in Kentucky, had Kentucky plates on his car, as he has had in 1957, 1958 and 1959, except that in 1958 he bought a car in New York while here on a short visit and New York plates were issued for it but changed to Kentucky plates when he returned there, and except that in 1959 his Kentucky plates were changed to Armed Forces plates when he again went overseas; that his 1956, 1957, 1958 and 1959 tax returns were filed at Louisville, Kentucky and showed two addresses, one a military address in Kentucky or Germany, the other a civilian address in Kentucky; that he visited Nassau County on an average of once a year since 1941 to visit his family and when served with the papers in this action in 1956 was in New York on leave as a result of the death of his father; that he has never voted or owned real property in either Kentucky or New York; that in April, 1959 he remarried and until sent overseas again lived with his present wife in Vine Grove, Kentucky, in a house owned by his wife’s mother and on which his wife and her sister pay the maintenance and taxes. Bearing in mind that plaintiff and defendant never established a marital home; that this is not the case of a Now York husband who left the State to establish a domicile after action had been brought against him, but the reverse, defendant having instituted his Kentucky action before the instant proceeding was *350 begun; that defendant maintained a civilian as well as a military-residence in Kentucky and through other acts evidenced an intention to make Kentucky his domicile, the court concludes that “ the presumption that the domicile and residence of a soldier, while in the Army, does not shift with each transfer to another military camp, but remains the place from which he was inducted ” (Lawrence v. Lawrence, 184 Misc. 515, 517) may be considered to have been offset and that in any event plaintiff has not sustained her constitutional burden.
That being so and the requirements of due process having been met in the Kentucky proceeding, the Kentucky decree prevents this court from awarding a separation. However, plaintiff being a New York wife, section 1170-b of the Civil Practice Act applies (Loeb v. Loeb, 4 N Y 2d 542, cert. denied 359 U. S. 913) and the ex parte Kentucky decree does not proscribe the award of support (Vanderbilt v. Vanderbilt, 1 N Y 2d 342, affd. 354 U. S. 416). But as the Appellate Division, First Department, stated in its decision in the Vanderbilt case (1 A D 2d 3, 13): “ Clearly, before maintenance may be ordered under section 1170-b, a wife must establish all the elements of one of the standard matrimonial causes of action.” Notwithstanding language in the Law Revision Commission’s Report on the bill which became section 1170-b that might be read as suggesting otherwise (see 1953 Report of N. Y. Law Rev. Comm., pp. 465, 467, 475, 476), the section must, in light of its language: “ refuses to grant * * * by reason of” (the ex parte divorce), and of the use in section 1170-a, a parallel statute, of the broader clause: “ for any reason whatsoever, other than lack of jurisdiction, refuses ”, be construed to mean that but for the ex parte decree the requested matrimonial relief would be granted.
The limitation thus incorporated in the statute prevents the court from making any support award in the present case, for plaintiff has not established her right to a separation. The complaint alleges that defendant in June, 1951 willfully abandoned the temporary domicile of the parties in Germany ; the proof not only wholly failed to demonstrate such abandonment but also shows that the parties never lived together and that it was understood prior to their marriage that they would not live together. Though the State is interested in the stability of marriage, that policy is not so strong as to invalidate an agreement made after marriage to live separate and apart. No distinction warranting application of a different policy to such an agreement made before marriage suggests itself to the court, especially where, as here, the marriage served the salutary purpose of legitimation of the child. Abandonment requires *351 that there be separation without consent (Dignan v. Dignan, 17 Misc. 268). True, when married persons are living apart by consent, the separation may, under some circumstances, be terminated by a request made in good faith for the renewal of the marital relation and its obligations (Mirizio v. Mirizio, 248 N. Y. 175; Solomon v. Solomon, 290 N. Y. 337) and an unjustified rejection of an unconditional offer to return will constitute an abandonment (Aghnides v. Aghnides, 308 N. Y. 530). Here, however, there has never been such an offer; plaintiff testified that she was willing to live with defendant but was never asked, she did not testify that she had ever asked for or offered resumption of marital relations. The complaint also alleges inadequate support. But where the parties are living apart by consent, the wife must show a good faith offer to resume the marital status before she is entitled to a separation on the ground of nonsupport. (Batchelor v. Batchelor, 295 N. Y. 544.) Even if that were not so, the evidence does not substantiate the claim of inadequate support or nonsupport, except for defendant’s termination of support payments after the Kentucky decree. While the Kentucky court could not terminate defendant’s support obligation to plaintiff, and its decree, therefore, did not justify his termination of payments after October, 1958, this court may not ground a separation on that termination since it occurred after the date of the complaint and no motion was ever made for leave to serve a supplemental complaint or to conform the pleadings to the proof in this respect.
While support may not be granted plaintiff for herself, it may be granted for the child of the marriage, however, for section 1170-a of the Civil Practice Act authorizes the making of directions with respect to maintenance and education of the child notwithstanding refusal, on any ground other than lack of jurisdiction, to decree a separation. Considering the circumstances of the parties, the court fixes $15 per week as the amount to be paid for support of the child and directs that payment of that sum shall commence as of April 18, 1960, the date of trial.
Plaintiff also seeks additional counsel fee and, by a separate motion made returnable on the day of the trial, also asked for the entry of judgment for arrears in temporary alimony. In opposition to the application for increased counsel fee, defendant relies on the fact that the July 5, 1956 order fixed counsel fee at $400, and on the rule stated in Beadleston v. Beadleston (103 N. Y. 402) and Ernst v. Ernst (277 App. Div. 1045) that an award of counsel fee may not be made for past *352 services. The Beadleston case (decided under Code Civ. Pro., § 1769, the predecessor of Civ. Prac. Act, § 1169), however, concludes p. 405): “We confine our decision to the precise facts of this case as they appear in the record. We have no doubt that an allowance to the wife during the pendency of the action, for some past expense, might be authorized if it were shown that its payment was necessary to enable her to further carry on the action or her defense thereto.” Again in Turner v. Woolworth (221 N. Y. 425, 428) the court, speaking of an award for counsel fees, stated: “The award then made became, with the costs of the action, the measure of her rights and of her husband’s obligation. There was ample power to increase the award, if thereafter it appeared to be inadequate.” (See, also, Baron v. Baron, 252 App. Div. 293.) When Justice Christ’s order was made, it was known that defendant was in service and, therefore, must have been contemplated that a military attorney might have to be appointed for defendant and that motions to place the case on the Military Calendar might be made. These items, therefore, will not be considered. It could not have been contemplated, however, that defendant would default, allow the matter to go to trial on inquest, then move to open his default and in connection with the second contested trial move for blood-groúping tests. For those services, all necessary to enable plaintiff to carry on the action, an additional allowance of $500 is made, and for services in connection with the motion for judgment for arrears, a further allowance of $100 is made. The judgment entered hereon will provide for payment of the $600 total at the rate of $100 per month beginning September 10, 1960 and on the 10th of each month until paid.
The answer to the question whether plaintiff may have judgment for arrears of temporary alimony is not so readily found. There is no question on the facts; arrears have accrued at the rate of $250 per month since October, 1958 and $200 still remains unpaid on the counsel fee originally ordered. Defendant argues on the law, however, that the only basis for support after the Kentucky decree is section 1170-b of the Civil Practice Act, which, it has been held in Meenan v. Meenan (286 App. Div. 775, 777, affd. 2 N Y 2d 802), does not contemplate the award of temporary alimony. That argument, however, ignores the fact that what is here sought is not an award but the entry of an arrears judgment on an award made long before the ex parte Kentucky decree. As Estin v. Estin (296 N. Y. 308, affd. 334 U. S. 541) makes clear, entry of such a judgment is governed by section 1171-b of the Civil Practice Act and Kentucky, having *353 obtained no personal jurisdiction over plaintiff, could make no decree affecting her rights under the prior New York order. (See, also, Kreiger v. Kreiger, 297 N. Y. 530, affd. 334 U. S. 555.)
The problem then is one of New York law, and in particular of construction of section 1171-b of the Civil Practice Act. May the court, notwithstanding the fact that it enters judgment dismissing the separation action, enter judgment for arrears of temporary alimony and counsel fee, and if it has the power, to what extent should it be exercised? The question of power was settled in the affirmative in Treherne-Thomas v. Treherne-Thomas (267 App. Div. 509) which held that judgment could be entered under section 1171-b of the Civil Practice Act for arrears of temporary alimony and counsel fee notwithstanding prior dismissal of the complaint. (See, also, Solotoff v. Solotoff, 51 N. Y. S. 2d 514.) Whether the decision is still good law in the First Department where it was rendered, may be doubted in view of that court’s decision in Wheelock v. Wheelock (3 A D 2d 25, affd. 4 N Y 2d 706, and the decisions of the Court of Appeals in Carbulon v. Carbulon (293 N. Y. 375) and Polizotti v. Polizotti (305 N. Y. 176). Whether it was ever law in the Second Department may also be doubted (Hayes v. Hayes, 150 App. Div. 842, affd. 208 N. Y. 600; Mays v. Mays, 258 App. Div. 751; Saunders v. Saunders, 63 N. Y. S. 2d 880, 883). It is not necessary now to determine that question for the order directing entry of judgment for arrears can be entered prior to the judgment dismissing the complaint, and the recent decision of the Appellate Division, Second Department, in Ross v. Ross (9 A D 2d 922) as well as the Treherne-Thomas decision (supra, p. 512) make clear that there can be no question of the right of the court to enter an order under section 1171-b at any time prior to (or it would appear, simultaneously with) entry of the judgment of dismissal.
The section gives the court discretion to order entry of judgment 11 for the amount of such arrears, or for such part thereof as justice requires having regard to the circumstances of the respective parties ”. The words “ as justice requires ” grant to the court broad discretion (Johnson v. Johnson, 295 N. Y. 477, see, also, 1948 Report of N. Y. Law Rev. Comm., p. 235 ff.). While those xvords do not enlarge the court’s poxver, or authorize it to grant different or greater relief than specified in the statute (Matter of Faehndrich, 2 N Y 2d 468), they mean ‘ ‘ that there are no ‘ as matter of law ’ requirements one way or the other as to those matters xvhich are to be dealt with in the discretion of the courts, on all the facts” (Vanderbilt v. Vanderbilt, 1 N Y 2d 342, 353, supra).
*354 Plaintiff argues that defendant’s remarriage is not such a change in circumstances as will justify reduction of alimony, citing Witkowski v. Witkowski (297 N. Y. 626); Goldberg v. Goldberg (265 App. Div. 946); Raynor v. Raynor (279 App. Div. 670) and Panarella v. Panarella (134 N. Y. S. 2d 440). The reduction of alimony is predicated on inability to pay (Civ. Prac. Act, § 1172-a), the former wife’s remarriage or meretricious association (Civ. Prac. Act, § 1172-c), or changed circumstances of the parties (Civ. Prac. Act, § 1170). Elimination of arrears under section 1171-b is, however, based on justice having regard to the circumstances of the respective parties. More important, both the Witkowski and Goldberg decisions state that defendant had remarried in violation of a New York divorce decree and since both Raynor and Panarella were New York divorce actions and both cite Witkowski and Goldberg as authority for the decision rendered it may be assumed that the same fact was also involved in those two cases. The instant case involves no such element. Divorced by the court of his domicile for a reason involving no moral taint, defendant was under no duty not to remarry. When to that factor is added the additional circumstance that since September 1, 1959 plaintiff has been employed as a school teacher at a salary of $5,100 per year, the court concludes that the requirements of justice will be satisfied by allowing plaintiff to enter judgment for arrears in counsel fee of $200 and arrears of alimony of $1,250, upon condition, however (see McCanliss v. McCanliss, 268 App. Div. 138, 142; Stafford v. Stafford, N. Y. L. J., March 18, 1958, p. 13, col. 2) that plaintiff stipulate in writing that the judgment to be entered shall contain provision for payment of the total amount of the judgment at the rate of $100 per month commencing March 10, 1961 and that execution on the judgment be stayed, the stay to be lifted on $100 thereof on March 10, 1961 and on an additional $100 per month on the 10th day of each succeeding month, with the further proviso, however, that should defendant become entitled to any lump sum payment from the Army or should his monthly income be hereafter increased by more than $75 per month, application may be made by plaintiff for a modification of the stay.