OPINION OF THE COURT
Lewis R Friedman, J.
This motion presents serious previously unanswered questions as to what effect should be given to an out-of-State judgment issued in the face of an order of this court restricting litigation to the courts of New York.
Plaintiff (husband) commenced this action for divorce, equitable distribution, custody of the two infant children and child support in November 1992; he served his complaint in April 1993. Wife answered and counterclaimed, inter alia, for divorce, equitable distribution and custody.
The parties jointly own a house. Shortly after the beginning of the case, in proceedings in New Jersey, wife charged abuse and obtained an order granting her custody of the children and an order of protection against husband. On April 7, 1993 the parties reached a temporary settlement of the custody and visitation issues and certain other matters. Wife was then represented by Joan Ellenbogen, Esq.,[1] an eminent member of the New York matrimonial Bar. Wife agreed "immediately to withdraw” the New Jersey proceedings. The parties at that time also agreed "that the Supreme Court New York County shall have exclusive jurisdiction over any matrimonial matter between the parties.” That stipulation was "so ordered” by Justice Wilk on April 7. In August and September 1993, this *1020 court tried the issue of custody of the children. Wife’s appeal from that order was submitted April 5, 1995.[2]
On May 3, 1994 wife served an amended answer which withdrew the counterclaim for divorce; she asserted that she had recently discovered that her marriage to husband was void. Husband did not oppose the service of the amended answer. On April 8, 1994, wife, appearing pro se, filed a complaint in the District Court of Clark County, Nevada, seeking an annulment of her marriage to husband. The parties had been married in Clark County, Nevada, on February 10, 1987. In her Nevada complaint wife asserted that at the time of her marriage to husband she was still legally married to her prior husband, Hubert Kelly. Wife’s claim was that her New York divorce from Mr. Kelly had been signed by Justice Kathryn McDonald of this court on January 5, 1987 but was not entered by the County Clerk until seven weeks later, February 26, 1987. She argued that since the divorce was not valid until February 26, the marriage of these parties on February 10 was void ab initio. The Nevada complaint alleged that both parties were currently New York residents. By order dated April 19, the Nevada court authorized out-of-State service on husband pursuant to Nevada Rules of Civil Procedure, rule 4 (e) (ii). Husband did not appear in the Nevada action although he was properly served. (Indeed he does not now contest that service.) On June 20, 1994 the District Court, Clark County, signed and entered, on default, a decree annulling the marriage between these parties.
Wife contends that the Nevada decree is entitled to full faith and credit and seeks to have this action dismissed. Husband cross-moves to have the court declare the Nevada decree invalid, and for a declaration that wife’s prior marriage to Hubert Kelly was legally dissolved prior to her marriage to husband.
Analysis starts with the validity of the Nevada decree and a determination of whether it is entitled to full faith and credit under the United States Constitution (art IV, § 1) and the implementing Federal statute, 28 USC § 1738. It is conceded *1021 that neither party claims to have a residence, or to be domiciled, in Nevada. Nevada law has long provided that its courts have jurisdiction to grant an annulment if the parties were married within the State, regardless of their current residence (1931 Nev Stat, ch 147, § 3, now Nev Rev Stat § 125.360). Nearly all modern cases that discuss jurisdiction in matrimonial matters use domicile or residence of the parties as the basis for according the judgment full faith and credit (see, e.g., Williams v North Carolina, 325 US 226, 229 [1945]; Sherrer v Sherrer, 334 US 343, 348-349 [1948]; Bumworth v Bumworth, 572 P2d 301, 304 [Okla App 1977]; cf., Perito v Perito, 756 P2d 895, 897 [Alaska 1988]; Whitehead v Whitehead, 53 Haw 302, 307, 492 P2d 939, 943; Restatement [Second] of Conflict of Laws §§ 70-71).
The first Williams case (supra) made it clear that domicile of one party is sufficient (Williams v North Carolina, 317 US 287, 298-301 [1942]). The question here is whether the location of the marriage ceremony alone is a sufficient State nexus for subject matter jurisdiction. There is no definitive answer. The hornbook rule is that a State has jurisdiction to dissolve a marriage "if either [party] has such a relationship to the state as would make it reasonable” (Restatement [Second] of Conflict of Laws § 72). Comment (b) to Restatement § 72 suggests, without support, that contracting of the marriage alone is not a sufficient contact. This court’s review of the cases has failed to disclose any case in this country where a statute such as Nevada Revised Statutes § 125.360 has been held insufficient to confer sufficient subject matter jurisdiction to warrant full faith and credit of the resulting judgment. Moreover, at least one court has granted full faith and credit to a Nevada annulment under section 125.360 (Matter of Peters, 876 P2d 114 [Colo 1994]).
New York has had a history of exercising jurisdiction without residence under circumstances similar to that in Nevada Revised Statutes § 125.360. For example, this State had long exercised jurisdiction to issue annulments where the only contact with the State was the marriage of the parties (Becker v Becker, 58 App Div 374 [1st Dept 1901]). From 1862 until 1966 New York provided by statute that a divorce could be granted so long as the parties were married in this State, regardless of their domicile at the time of the divorce (L 1862, ch 246; Code Civ Pro § 1756; Civ Prac Act § 1147; Domestic Relations Law former § 170 [2]). That basis for jurisdiction was repealed as part of the Divorce Reform Act of 1966 (L 1966, ch *1022 254). One lower court has held the situs of the marriage to be constitutionally sufficient for jurisdiction (David-Zieseniss v Zieseniss, 205 Misc 836, 841 [Sup Ct, NY County 1954]). Further this State has long recognized divorces granted in countries where divorce jurisdiction is not based on the traditional definition of domicile (Gould v Gould, 235 NY 14 [1923] [France]; Rosenstiel v Rosenstiel, 16 NY2d 64 [1965] [Mexico]).
It is logical to afford to the courts of the State where the marriage is contracted the authority to decide if it is valid. That State has the most substantial contacts to the marriage contract itself; neither the passage of time nor change of domicile of the parties diminishes that connection. Indeed, the traditional, well-established, conflicts of law rule is to look to the substantive law of the State of the marriage to determine the marriage’s validity (Restatement [Second] of Conflict of Laws § 283 [2]). Allowing the State of the marriage to determine its validity does not encourage migratory actions. The parties voluntarily chose Nevada as the site of their marriage. There is no logical reason to find Nevada inappropriate. Nor is there a due process problem with the Nevada action. There is no doubt that husband was afforded adequate notice of the Nevada proceeding and had ample opportunity to appear had he chosen to do so. Thus, in the ordinary course this court may not reexamine whether the Nevada decree is correct[3] nor deny it full faith and credit.
This case presents a separate significant issue because of the order of Justice Wilk, entered on consent, which provided that New York has "exclusive jurisdiction over any matrimonial matter between the parties.” The court finds that the order is the equivalent of the increasingly common antisuit injunction issued in matrimonial cases. The Supreme Court has long recognized the need for, and utility of, injunctions that prevent one party from commencing or continuing litigation in another State (see, Cole v Cunningham, 133 US 107, 124 *1023 [1890]). New York courts have, for over a half century, found the use of antisuit injunctions to be particularly appropriate in matrimonial cases since almost any judgment obtained in a sister State will be entitled to full faith and credit (see, e.g., Garvin v Garvin, 302 NY 96 [1951]; Pereira v Pereira, 272 App Div 281, 288 [1st Dept 1947]; Palmer v Palmer, 268 App Div 1010 [3d Dept 1944]). This court is regularly confronted with the question of whether to issue an antisuit injunction. Often the parties have maintained two or more residences. In some cases one of the parties has set up a new residence, perhaps to seek the "benefit” of a "no fault” divorce or a "better” law on equitable distribution. The result is that the court often enjoins one of the parties from commencing or continuing a divorce action in another State.
There is no doubt that wife’s annulment proceeding is a "matrimonial matter” which, by wife’s consent and Justice Wilk’s order, is within this court’s exclusive jurisdiction. This court concludes that wife’s commencement of the annulment proceeding in Nevada clearly violated the order. The question then is what consequences should flow from wife’s prohibited act. This issue has ramifications well beyond the parties here. It concerns what effect should be given to an antisuit injunction which is violated by a party who then brings an out-of-State action to judgment.
Several New York courts have dealt with the question presented here but none has reached a definite resolution. At least one court has held that the remedy for a violation of the injunction is to prohibit the use of the resulting decree in New York (Palmer v Palmer, 184 Misc 291, 294 [Sup Ct, Broome County 1945]). The only appellate decisions declined to reach the question (Edell v Edell, 284 App Div 758 [4th Dept 1954]; McKendry v McKendry, 280 App Div 440 [4th Dept 1952]). One lower court, without resolving the question on the merits, granted a motion to amend the answer concluding that full faith and credit required that the party asserting the out-of-State judgment at least be allowed to plead the existence of the judgment as a defense to be litigated at trial (Gidney v Gidney, 40 Misc 2d 429 [Sup Ct, Erie County 1963] [Jasen, J.]). Then Justice Bernard S. Meyer in a scholarly opinion distinguished all the earlier cases and found that the issuance of a foreign decree prior to the issuance of a permanent injunction in New York required the party opposing full faith and credit to prove the invalidity of the foreign judgment ("Dominick” v "Dominick”, 26 Misc 2d 344, 348 [Sup Ct, Nassau County *1024 I960]). But "Dominick ” is not dispositive because that holding turned on whether the enjoined party had a bona fide foreign residence; the proof clearly showed that under any standard the defendant had a proper domicile in Kentucky so that his Kentucky divorce was constitutionally binding.
It is well settled that an antisuit injunction operates only to enjoin a party; it does not bind the courts of a foreign jurisdiction (e.g., McKendry v McKendry, supra; Kleinschmidt v Kleinschmidt, 343 Ill App 539, 546-547, 99 NE2d 623, 626 [1951]). Also, the injunction itself is not entitled to full faith and credit in the foreign jurisdiction (cf., Walker Mem. Baptist Church v Saunders, 285 NY 462, 474; "Dominick” v "Dominick”, supra). One noted scholar has written, "as an original question it would be arguable that the full faith and credit clause should compel the other state to accept the injunction as an adjudication of the impropriety of the forum for suit, but the authorities are all the other way” (Leflar, American Conflicts of Law, at 118-119 [1968]). In the face of an antisuit injunction, there is no bar to a sister State’s determination on the merits of a matter presented to it. Several courts presented with an out-of-State injunction have specifically found that the injunction is only one factor to be considered in determining whether to decide the action on the merits (Abney v Abney, 176 Ind App 22, 26-28, 374 NE2d 264, 267-268 [1978]; Roggenkamp v Roggenkamp, 25 Md App 243, 250, 333 A2d 374, 378 [1975]; cf., Allen v Chicago WR Co., 239 Ill App 38, 43). And, of course, the mere pendency of a proceeding in another State does not bar consideration of the merits (see, e.g., Buckner v Buckner, 95 NM 337, 622 P2d 242 [1981]).
Courts in other States have uniformly held that a judgment issued by a sister State is entitled to full faith and credit even in the face of a local antisuit injunction (e.g., Nowell v Nowell, 157 Conn 470, 476, 254 A2d 889, 893 [1969]; Knaus v Knaus, 387 Pa 370, 380, 127 A2d 669, 674 [1956]; Stambaugh v Stambaugh, 458 Pa 147, 154-155, 329 A2d 483, 487 [1974]; Bonate v Bonate, 78 Ill App 3d 164, 166-167, 397 NE2d 88, 89-90 [1979]).
This court concludes that there is no reason to deny full faith and credit to the Nevada annulment decree. Husband was afforded an opportunity to appear and defend but chose not to do so. Husband argues that wife should for some reason be estopped from asserting the decree which she obtained. The argument appears to be that there was a fraud on the Nevada court. Wife did not disclose to the Nevada court that this *1025 divorce action was pending. Although she did not assert that no other matrimonial action was pending, she did refer to the custody decision here. Wife did not disclose that she had previously acknowledged the validity of the marriage in her counterclaim for divorce. She did not claim to be a Nevada resident. Wife did not disclose the existence of this court’s order of exclusive jurisdiction, but the Nevada rules did not require disclosure of whether any other court had exclusive jurisdiction in the matter. The court does not find that wife’s conduct constituted a fraud on the Nevada court. The Federal Constitution requires that this court give full faith and credit to out-of-State judgments which are entered on a jurisdictional basis such as the decree here. The Federal supremacy doctrine requires this court to override its parochial concerns in enforcing its own injunction and in correcting an erroneous order of the courts of another State. This situation is similar to that presented where the court must give full faith and credit to an order of a court which has refused to give full faith and credit to a prior New York decree (Lynn v Lynn, 302 NY 193; Douropoulos v Douropoulos, 67 Misc 2d 518, 519 [Sup Ct, Queens County 1971]).
Based on the Nevada annulment decree, the court must grant summary judgment dismissing the cause of action for divorce. That dismissal exposes a little discussed loophole in the New York equitable distribution statute. Domestic Relations Law § 236 (B) (5) (a) provides that equitable distribution may be obtained "in an action wherein all or part of the relief granted is divorce, or the dissolution, annulment or declaration of the nullity of a marriage, and in proceedings to obtain a distribution of marital property following a foreign judgment of divorce.” Distribution of marital property following a foreign annulment decree is conspicuous by its absence from that list. The Domestic Relations Law § 236 (B) (2) definition of "matrimonial actions” uses similar terms. Those actions include "proceedings to obtain maintenance or a distribution of marital property following a foreign judgment of divorce.” One commentator has opined that "if the dissolution was more in the nature of an annulment” it should be "considered” to be " 'foreign judgment of divorce’ ” (Scheinkman, Practice Commentary, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law § 236 (B), at 187 [1986]). This court finds that there is nothing in the legislative history to support a conclusion that decrees that are "in the nature” of listed items should be included. The court concludes that the Legis *1026 lature intentionally included annulments and declarations of nullity in the list of New York, but not foreign, actions subject to equitable distribution. The statute simply provides that even though equitable distribution is available after a New York annulment (Lobotsky v Lobotsky, 122 AD2d 253 [2d Dept 1986]), it is not after a foreign annulment. Therefore, as husband concedes, his claim for equitable distribution may not stand.
This disposition should not be taken as a license to persons enjoined to violate injunctions. A party who has obtained an injunction may well obviate problems by timely protecting its injunction with an immediate contempt motion, or appearance in the foreign court to assert its legal position. The question of a remedy for violation of an antisuit injunction has been broached by several courts. All reported cases have held that contempt sanctions are available in spite of the necessity to dismiss all or part of the action. The nature of the contempt remedy imposed varies from State to State. A party cannot be ordered to purge a contempt by vacating the out-of-State judgment, since the party obviously lacks the power to do so (e.g., Kempson v Kempson, 63 NJ Eq 783, 787-788, 52 A 360, 361 [1902]). At least some States seem to require that the party subject to the injunction to return to the foreign State present to the court there the truth of the situation and seek in good faith to have the decree vacated (Brown v Brown, 24 NJ Super 198, 203, 93 A2d 616, 619 [App Div 1953]; Stambaugh v Stambaugh, 458 Pa 147, 329 A2d 483, supra). The scope of the contempt remedy for breach of an antisuit injunction has not yet been explored in New York. Nothing in New York law appears to bar the court from directing wife to seek to clarify the proceeding in Nevada, but there is no showing that Nevada law permits reopening the annulment proceeding at this time. The court notes that Judiciary Law § 773 provides that, among other remedies, the court, if it finds that a party has suffered damages because of the contempt, must impose "a fine, sufficient to indemnify the aggrieved”. It may well be that the court may fix a contempt fine equal to the equitable distribution that would have been available but for the violation of the injunction.[4] The ultimate remedy, if any, to be imposed if a contempt proceeding is brought in this case will be resolved at a later time.
*1027 The motion for summary judgment is granted to the extent that the causes of action for divorce and equitable distribution are dismissed. The custody and child support decisions and pending contempt motions are not effected by this decision. The cross motion is denied.

. Wife has since appeared pro se and has been represented by two other attorneys. Current counsel has been relieved on her motion; no new attorney has appeared.

. The parties are currently litigating in three other forums: in the New Jersey courts, about damages to the house they own; in the Bankruptcy Court, as a result of wife’s petition; and in Federal court in New York, where husband sued wife for personal injury and wife brought third-party claims against husband’s counsel in this case and this court. Those third-party claims have been dismissed. Wife is represented by different counsel in each proceeding.

. The Nevada decision appears to be based on a misunderstanding of New York law. The validity of the prior New York divorce is the only issue raised in wife’s claim that her subsequent marriage to husband is invalid. Clearly the validity of the New York divorce is determined by substantive law of New York, not Nevada. There is little doubt that wife’s divorce from her former husband in New York was final as of the moment of Justice McDonald’s signature; the ministerial act of the clerk’s entry of the judgment was irrelevant (see, e.g., Handzel v Handzel, 59 AD2d 810 [3d Dept 1977]; Jayson v Jayson, 54 AD2d 687, 688 [2d Dept 1976]; cf., Cornell v Cornell, 7 NY2d 164, 171 [1959]). Thus, under a proper application of the New York law wife’s divorce was effective prior to the parties’ marriage.

. It is interesting to note that a contempt fine, even if paid to the injured party, may well be a debt that is not dischargeable in bankruptcy (11 USC § 523 [a] [6]; cf., In re Marini, 28 Bankr 262, 264-265 [ED NY 1983]).