Seymour Bieber, Spec. Ref.
Plaintiffs seek a declaratory judgment determining that defendant has been duly discharged from his duties as minister of the Sharon Baptist Church, Inc., and no longer holds such position or title. Plaintiffs also seek a permanent injunction enjoining defendant from acting or holding himself out as pastor or minister of said church and from interfering with its operations. At the conclusion of the trial, plaintiffs withdrew their request for an accounting by defendant of the assets and property of the church.
On or about March 7,1961, defendant, by oral agreement, was engaged as Minister of the Sharon Baptist Church, Inc. Subsequently, on January 25, 1962, a petition was circulated among the church members demanding defendant’s resignation. In compliance with such petition, on March 22, 1962, a meeting was called by members of the church’s board of deacons who adopted a motion for a special meeting of the congregation, to be held on April 6, 1962, for the purpose of voting upon defendant’s removal as minister of the church. Two notices of this special meeting were mailed to the church membership. The first notice consisted of the announcement of the April 6 meeting and a complete list of the charges against defendant. The second notice contained a similar announcement and a facsimile of the proposed ballot to be used at the scheduled meeting. Notices of the forthcoming meeting, together with the listed grievances against defendant, were also distributed by hand at the church premises. Those notices posted on the church bulletin board, in accordance with past practice of the Sharon Baptist Church, were torn off, apparently by supporters of defendant.
On April 6, 1962, those church members attending the special meeting, by a vote of 120 to 2, called for defendant’s dismissal. Defendant, however, has refused to recognize the purported *316 effectiveness of the balloting at this meeting and, to date, has continued to serve and act as the Minister of tifiaron Baptist Church, Inc.
The principal issue in dispute is whether defendant was properly and effectively discharged from his position as minister pursuant to the existing customs, practice and usages of the Baptist Church.
It is most unfortunate that a religious organization must seek a judicial determination regarding the customs and usages of its faith and whether they have been adhered to by members of the church congregation who seek to dismiss their minister. The office of pastor or minister of a church is one of dignity, reverence and high esteem. Its import to the members of the congregation is of the greatest significance and one in which all of them are entitled to a voice concerning its continuation or termination. It is not an office to be lightly bestowed or easily withdrawn. Where revocation or dismissal is predicated, as here, upon alleged grievances and specific charges of misconduct, the procedure adopted to terminate such office must be conducted in strict adherence to stated governing principles, or where none exist, with accepted and honored custom, policies and usage (see Hayes v. Board of Trustees, 225 N. Y. S. 2d 316, 320).
Unlike other religious denominations, there is no central governing body in the Baptist faith. Thus, inasmuch as there exists no superior ecclesiastical entity vested with the power to prescribe rules by which a Baptist Church may appoint or discharge a pastor, past and accepted customs must be relied upon as the basis for effecting designations and discharges, provided they are consistent with our statutory law.
Under our laws, a church may function as a religious society or, as in the instant action, as a religious corporation, governed by the Religious Corporations Law. Incorporated or not, however, there exists within every church structure two separate entities, one of which is the “ business ” or “ corporate ” entity and the other the “ religious ” or “ ecclesiastical ” entity. The business or corporate officers are the trustees, who are charged with the administration of the temporal affairs of the church. The religious or ecclesiastical officers are the minister or pastor and the board of deacons, who are concerned with the spiritual affairs of the church and attend to the spiritual welfare and needs of its members. It is obvious, therefore, that each entity and its officers have separate functions, controlled by separate directives, the temporal affairs being governed by statute and the spiritual affairs by ecclesiastical direction, custom, policy, *317 tradition or usage (see Walker Mem. Baptist Church v. Saunders, 285 N. Y. 462, 467 et seq.; Metropolitan Baptist Church v. Braxton, 137 N. Y. S. 2d 294, 295, affd. 285 App. Div. 1044).
The Religious Corporations Law of this State contains no mandate as to the procedure or method to be followed to effect legally a discharge of a Baptist minister, except that these statutes expressly prohibit his removal by a board of trustees (Religious Corporations Law, § 139). It necessarily follows, therefore, that the removal of a minister is a function only of the spiritual entity of the church and cannot be validly effected by the temporal officers.
It is apparent from the diverse and frequently conflicting testimony of purported experts on the Baptist faith who testified upon the trial of this action that many of the practices of this denomination differ in the various autonomous Baptist Church bodies. One salient principle, however, is evident in all such expert testimony. No doubt exists among the experts that the focal point of all authority in the Baptist Church rests in the congregation, the church membership. It is well settled Baptist policy and tradition that the congregation alone has the power and authority to make the ultimate decision of whether the church’s minister remains in office or whether he is to be removed therefrom (see Sherburne Vil. Baptist Soc. v. Ryder, 275 App. Div. 729). It is clear, too, that prior to reaching any decision, Baptist custom and tradition require the congregation be assured that the minister charged with misconduct has been apprised of the charges against him and afforded an opportunity to be heard and to defend himself (Hayes v. Board of Trustees, supra, p. 320). By its customs and practice, the Baptist faith demands a fair, democratic and impartial hearing on due and timely notice before the entire church congregation, which will then cast the deciding vote.
The documentary evidence adduced before me clearly establishes that defendant was duty notified of the scheduled meeting of April 6, 1962 and the charges against him. There remains, however, the disputed issue as to whether Baptist custom and usage require one or more congregational meetings for effectively removing or dismissing a minister. Plaintiffs contend one such meeting, called on proper notice to the church membership and to the minister, is sufficient for effective removal. Defendant urges, however, that where the church membership wishes to discharge a minister, in the absence of specific by-laws or an established particular church practice to the contrary, Baptist custom and practice require two meetings; a first meet *318 ing of the congregation must be held, on notice, to consider whether the church membership wishes to bring charges against the minister. If such action is affirmatively decided by a majority vote of the congregation, defendant argues that custom then demands a second meeting be held, thereafter, on notice again to the congregation, for the purpose of holding a hearing on the specific charges and the minister’s reply thereto.
It should first be noted, contrary to defendant’s contention, the credible evidence shows that in the absence of relevant church by-laws or resolutions, a member of a Baptist congregation continues to be a member of his church, with the right to vote and to participate in all ecclesiastical meetings, regardless of whether he has financially supported the church. This right to take an active part in church affairs remains constant until such time as the congregant, dues-paying or otherwise, may be deprived of membership by a vote of the congregation. Significantly, even several of the expert witnesses called by defendant admitted this to be proper Baptist custom and practice. Thus, it clearly appears that in a Baptist Church, the “ corporation ” or temporal board of trustees has no power or authority by itself to expel a church member from ecclesiastical membership or to prevent his voting at a church meeting.
In the Baptist faith, membership in the ecclesiastical body, ipso facto, allows a congregant to vote and to voice his opinion at all meetings of the religious entity (Walker Mem. Baptist Church v. Saunders, supra, 285 N. Y. 462, 474). Such church membership may be terminated in one of three ways only, to wit, (1) by transfer, namely, by “delivery of letter” to another Baptist church; (2) by expulsion, when the offending member has violated the church discipline and the ecclesiastical body regards him as unfit for membership therein, and (3) by death.
Similarly, contrary to defendant’s contention, it does not appear from the proof adduced here that there is a fixed and immutable Baptist practice requiring a meeting of the board of deacons and a recommendation issuing therefrom prior to the calling of a congregational meeting for some specific purpose.
As above noted and as expressed by expert witnesses at the trial, the membership is “ the Supreme Court ” of the Baptist Church and all regulatory and decisional powers emanate from these “ grass roots ”.
Giving due consideration, therefore, to the basic tenet of Baptist tradition, custom and usage that the authority to discharge a minister lies solely with the congregation, I hold that the weight of relevant expert testimony and other credible evidence establish, as defendant urges, that two meetings of the *319 church membership are required to dismiss a minister properly and effectively. As opposed to the single meeting policy advocated by plaintiffs, the two-meetings practice finds support in the very nature of the congregational and democratic form of church government existing under Baptist custom and usage. In a matter as critically vital as the removal of the chief spiritual leader of a church, and particularly in view of traditional Baptist democratic processes in all other church matters, the requirement of a prior meeting, on due and timely notice to the whole membership, to consider first whether charges should be brought against the minister, followed by a second meeting, on like notice, for a hearing of these charges, is the traditional procedure which must be adhered to in order to conform to Baptist custom and usage. This practice obviously is intended to prevent a small, dissident group from making abrupt and hasty decisions affecting the entire congregation and eliminates the possibility of even a claimed majority usurping unto itself the authority and power to bring and to hear serious charges at one and the same time.
Despite plaintiffs’ reliance thereon, there is nothing in the record which warrants the conclusion that this court is bound by Hiscox’ Directory (New Directory for Baptist Churches by Rev. Edward S. Hiscox) as the controlling authority of the principles governing the policies, customs and usages of the Baptist Churches. First, it is to be noted that there was sharp disagreement upon the trial of this action as to the interpretation and meaning of the relevant portions of the directory. Second, as already stated, the testimony of expert witnesses established that many of the practices of the Baptist faith differed in the various autonomous church bodies. Moreover, there is no proof in the record which conclusively shows that Sharon Baptist Church was guided in its practice and discipline solely and exclusively by the writings of Rev. Hiscox and his explanation of the traditions and policies of the Baptist denomination, nor is there any evidence of a past practice or custom at Sharon Baptist Church whereby its minister was removed after charges were brought and a hearing conducted thereon, both at a single meeting.
Upon the evidence before me, therefore, I hold that the membership meeting of April 6, 1962, even though it may have been preceded by a meeting of the board of deacons, was insufficient to accomplish the valid removal of defendant as minister of Sharon Baptist Church. Such single membership meeting does not conform with traditional discipline, customs and usages of the Baptist Church which require two separate congregational *320 meetings for the purposes above set forth. It necessarily follows, therefore, that until he is properly removed, or until such time as he resigns or otherwise leaves his church, defendant remains its minister and spiritual leader.
Judgment is rendered in favor of defendant determining that he is still the minister of Sharon Baptist Church, Inc., and entitled to act and hold himself out as such. No proof having been offered by defendant in support of his counterclaim, the same is hereby dismissed. No costs are awarded.