*598 OPINION OF THE COURT
William D. Friedmann, J.
The United Solid Rock Baptist Church has hardly been united or solidly constituted for more than the past year.
That is very evident from this action between members and officers of that church with regard to the election and membership in its deaconate and trustees and certain other actions taken by defendants. Plaintiffs seek declarations that the constitution provision for founding and permanent deacons is void as well as the provision giving the deacons veto power over the church membership. Plaintiffs also seek injunctive relief restraining the determination denying plaintiffs and others the right to vote and the determination that reduced the salary of the pastor.
PERTINENT BACKGROUND
The defendant church was incorporated in February of 1983. In July of 1985, the current constitution and bylaws were adopted. They provide, in pertinent part, that the church is a Baptist church with its internal discipline governed by the New Testament and Hiscox’s Directory as well as the constitution and bylaws. They also provide that the church should maintain regular affiliation with regional and national Baptist associations.
With regard to the deacons, the constitution provides (art 4, § 3 — Role of the Deacon):
"the DEACON — THE FOLLOWING DEACONS NAMED BELOW ARE ORGANIZING DEACONS OF THE UNITED SOLID ROCK BAPTIST CHURCH AND ARE LIFE-TIME DEACONS OF THE SAID CHURCH:
EDDIE DAVIS LEROY HODGE MADISON HOLMES CHARLES HOOKER HAROLD JOHNSON
GEORGE JONES RAYMOND OWENS JIMMY SMITH JOHNNY WHEELER WILEY WINSTON
"THE FOLLOWING SAID DEACONS ARE CHARTER AND LIFE-TIME DEACONS OF THE UNITED SOLID ROCK BAPTIST CHURCH:
JAMES MANN CLARENCE THOMPSON MARTIN VAIRD
"(1) SHOULD THE NEED ARISE, THE DEACON BOARD HAS THE AUTHORITY TO ADD AT THEIR DISCRETION, SHOULD THEY FIND ONE WORTHY OF THE POSITION OF WALKING DEACON(s), TO THE BOARD;
*599 "(2) AT.T, DECISIONS PERTAINING TO THE WELFARE AND ADMINISTRATION OF THE CHURCH SHALL REMAIN IN THE HANDS OF THE DEACONS AND TRUSTEES;
"(3) A DEACON SHALL AUTOMATICALLY BE A MEMBER OF THE TRUSTEE BOARD AND AT ANY TIME MAY REQUEST A FINANCIAL REPORT IN REFERENCE TO THE CHURCH’S FINANCES * * *
"(5) THE DEACON BOARD MAY, SHOULD IT BE NECESSARY, SUPERSEDE ANY DECISION MADE BY THE CHURCH AND PASTOR, IF THEY AS REASONABLE MEN, SEE IT AS A THREAT TO THE POSITIVE WELFARE OF THIS CHURCH.
"(6) THE DEACON BOARD SHALL HAVE THE FINAL DECISION OVER AT.T, FINANCIAL ARRANGEMENTS MADE IN THE NAME OF THE SAID CHURCH, INCLUDING ALL ARRANGEMENTS MADE FOR THE PASTOR”.
The constitution also provides for a Board of Trustees (art 4, § 4) who are responsible for the property of the church and its legal and financial matters.
As to the hiring and compensation of the pastor, the constitution provides that he shall be approved by the deacon board and the church. More particularly, it states: "the pastor SHALL BE AN EMPLOYEE OF THE UNITED SOLID ROCK BAPTIST CHURCH. SALARY SHALL BE DETERMINED BY THE DEACONS AND TRUSTEES, AFTERWHICH THE MEMBERS OF THE CHURCH WILL VOTE ON THE CONTRACT.” (Art 4, § 2 [9].)
With regard to membership, the constitution provides (art 3, § 3): "an active member is one who possesses the privilege OF VOTING AND HOLDING OFFICE IN THE CHURCH. IN ORDER TO BE AN ACTIVE MEMBER, ONE MUST ATTEND THE PUBLIC WORKSHOP AND CONTRIBUTE FINANCIALLY TO THE SUPPORT OF THE CHURCH.”
Article 7 entitled "Determining Active Membership” provides:
"(1) FOLLOWING THE FINANCIAL REPORT AT THE END OF THE YEAR, THE FINANCIAL OFFICERS SHALL EXAMINE THE INDIVIDUAL MEMBERSHIP RECORDS TO DETERMINE ACTIVE MEMBERSHIPS;
"(2) ANY PERSON WHO (DEACON AND TRUSTEES), AT THE END OF JANUARY OF THE NEW YEAR, IS FOUND NOT TO HAVE CONTRIBUTED PROPERLY DURING THE PRECEDING YEAR, SHALL BE ADJUDGED FINANCIALLY DELINQUENT AND REMOVED FORM THE ACTIVE ROLL; AND
"(3) ANY PERSON WHO, WITHOUT JUSTIFIABLE REASON, ABSENTS HIMSELF FROM THE PUBLIC WORSHIP FOR 3 MONTHS, SHALL BE ADJUDGED DELINQUENT, AND HIS NAME SHALL BE REMOVED FROM THE ACTIVE ROLL. NOTICES OF DISMISSAL MUST BE SENT TO DELINQUENT MEMBERS PRIOR AND AFTER CHURCH ACTION. NOTICES WILL BE SENT BY CERTIFIED MAIL. ”
*600 The constitution and bylaws provide for annual meetings in November and for regular quarterly meetings of the church membership. Trustees and officers of the church are to be elected by the membership after confirmation by the deacons.
Apparently, regular meetings were not held. It is undisputed that a meeting of the church was called for March 12, 1991 for the purpose of electing church officers and trustees. At that meeting, the majority of votes were cast for George Jones and Jimmy Smith as chair and vice-chair, plaintiff, Paulette Ward, as secretary and Jerry Hatcher as trustee. The balloting for chairperson of the Board of Trustees was between Helen Johnson and incumbent Annise Odom-Mitchell. Either after the balloting or at a point that it appeared Ms. Johnson would be successful, the evidence shows that Ms. Odom-Mitchell announced that she would not accept the result and claimed a right to lifetime tenure. The resulting disruption terminated the meeting. The rift remained unresolved and several members stopped their contributions in protest. Apparently, another election was conducted in May of 1991 at which attendance was restricted and at which Ms. Odom-Mitchell was elected. Thereafter, a meeting was held on June 24, 1991 at the request of the pastor. From the minutes, it is clear that the dispute remained unresolved and that the lifetime deacons would not accept any action of the membership which they saw as a threat to the church. At that meeting, the majority of those present and voting determined to remove from active membership all those who continued to withhold their dues. No prior notice was to be given. A letter dated July 3, 1991 was sent to those protesting members stating that they were financially delinquent and were removed from active membership as of July 1, 1991. This letter was signed by Ms. Odom-Mitchell as chair of the board. At this same meeting, as part of an economic savings effort, they voted to reduce the pastor’s compensation by one half. The evidence shows that the pastor was more than sympathetic to the objectives of the plaintiffs herein.
Thereafter this lawsuit was commenced.
OBSERVATIONS
Initially, this court must observe that the State and the courts in particular, exercise extreme caution in considering issues of internal operation of churches. (See, Morris v Scribner, 69 NY2d 418; First Presbyt. Church v United Presbyt. *601 Church, 62 NY2d 110.) Churches are viewed in two parts. The first is the spiritual including the doctrine and basic beliefs of the church. The second is the temporal including its real property and the income used for its general operations. The courts of this State, with great reluctance, will resolve issues relating to the latter but not the former. (See, Walker Mem. Baptist Church v Saunders, 285 NY 462, 472.) In furtherance of this approach, the Legislature enacted the Religious Corporations Law to permit the use of a corporate entity to protect the temporalities of a church. (See, Morris v Scribner, supra, at 423; St. Nicholas Cathedral v Kedroff, 302 NY 1, 29.) Thus, while we generally speak of an incorporated church including both aspects, for purposes of the law, the corporation is only the temporal side of a church.
It is against this background that the court will review the issues in this case. At the heart of this case is the fundamental organization of a Baptist church. It is argued by plaintiffs that a permanent deaconate is prohibited and should be overturned.
Baptist churches are congregational, that is, controlled, in general, by the will of its membership. In resolving these issues, the court must be guided by the church constitution and bylaws as well as past and accepted custom. (See, Evans v Criss, 39 Misc 2d 314; Hayes v Board of Trustees, 225 NYS2d 316.) Both by its constitution and by general custom, Baptist churches are guided by Edward T. Hiscox’s Principles and Practices for Baptist Churches. The 1980 edition thereof provides in part at page 112 as to the time of service of deacons: "The period of time for which they are chosen, as well as the number, is discretionary with the church, since no scriptural precept or precedent directs. More commonly, they have been chosen for an indefinite period, which was substantially for life, unless they resigned, died or [were] removed. But since it not infrequently happens that persons in the office become inefficient and sometimes obstructive, the practice of electing them for a limited period has come to be quite prevalent; generally for three years. In this way, the office expires by limitation, and if better men are available, they can be chosen without offense. Which is the better rule, each Church must judge for itself.”
Both Dr. Oscar Birson and Dr. Washington Lundy, testifying as experts on Baptist customs, stated that they did not favor lifetime deacons but did not conclude that it was an improper practice. Similarly, the revised edition of Harold *602 Nichols, The Work of the Deacon and Deaconess (Judson Press), at pages 36 and 37 encourages limited terms but does not exclude a lifetime office.
CONCLUSIONS AND DIRECTIONS
The office of deacon has primarily a ministerial function and, in large measure, deals with the spiritual well-being of the church and its members. In this function, the court will not interfere with the constitution and bylaws of this church. While this may be outside the mainstream of current Baptist practice, it is not impermissible. The life tenure of certain named deacons is clear in the constitution and as to them cannot be disputed.
However, the same cannot be said of the trustees. The court need not decide whether any church might have permanent trustees. The only issue here is whether a Baptist church may. The general evidence establishes that Baptist churches are congregational in nature and governed by the will of its membership. The general provision of the Religious Corporations Law provides that meetings and basic governance of a church are governed by the rules, discipline and practices of its denomination. (Religious Corporations Law §§ 25, 26.) Such provisions do not apply to Baptist churches. (Religious Corporations Law § 27.) This exclusion makes clear that the governance of a Baptist church is solely in the hands of the membership. (Cf., Walker Mem. Baptist Church v Saunders, supra, at 467-468.)
Trustees have limited authority and conduct the financial affairs of the church subject to the will of its members. (Religious Corporations Law § 139.) While the Legislature has not specifically limited terms of trustees, the contrary appears impossible. Permanent trustees are beyond the control of the membership and this is contrary to the clear corporate system for Baptist churches.
The primary problem of this case is the way the constitution and bylaws intermix the deacon and trustee function and give absolute veto power to the deacons. To the extent that the deacons have final and complete control of the spiritual matters of this church, this court cannot overturn this result. While this conclusion may not be typical of Baptist churches, it is the rule in this church. However, the same is not true of its trustees. (See, Hiscox, Principles and Practices for Baptist Churches, at 116-117 [1980 ed].) This court declares that the *603 Board of Trustees are not permanent. The deacons cannot have absolute veto power over the conduct of the financial matters of the church. To the extent that the constitution and bylaws appear to state the same, this court declares that it violates the purpose of the Religious Corporations Law. The temporalities of this church, including its real property, income, personal property and the term and salary provisions of its contract with the pastor, shall be in the control of the elected trustees subject to the approval of its membership. In this regard, the court notes that the bylaws make no provision for a permanent trustee. Further, Ms. Odom-Mitchell is not listed as a permanent deacon. Therefore, her claim to tenure as chair of the Board of Trustees is in error.
Accordingly, the court directs that a new election for trustees of this church be conducted no later than 60 days after service of a copy of the judgment to be entered hereon.
The second question in this case is who may vote at such election? In other words, who is a member of this church? In this regard, the constitution and bylaws are clear. Active membership and therefore voting rights, is accorded to any "elected” Christian who attends public worship and contributes to the financial support of the church. Attending public worship is said to exclude anyone who absents himself from public worship for three months.
It appears undisputed that the membership of the church decided in February of 1991 that financial support would require a member to tithe or pay $10 per week dues. No one claims that the rule is arbitrary or onerous and this court cannot say that it is illegal. (See, Matter of Anthony v Cardin, 91 Misc 2d 506.) The time and manner of the application of this rule is questioned.
The bylaws provide that determination of active membership shall be made "following the financial report at the end of the year”. At that time, members will be found financially delinquent who are "found not to have contributed properly during the preceding year”. Whether the letter of July 3, 1991 was merely an effort to exclude dissident members or a legitimate effort to enforce financial responsibility for the church is an issue the court need not decide. The letter of July 3 was violative of the bylaws.
Accordingly, all those who were members of the church on March 12, 1991 and all new members shall be entitled to vote for the trustees. Those members who received letters declaring *604 them to be financially delinquent shall be entitled to vote if they should return to public worship and bring their financial account to current prior to the election for trustees. The church shall notify such members of their right to vote and the conditions at least 30 days prior to the scheduled meeting for the election of trustees.
An issue remains as to the decision to reduce the compensation of the pastor. The constitution provides that "the pastor MUST ENTER INTO CONTRACT WITH THE UNITED SOLID ROCK BAPTIST CHURCH IN ORDER TO SERVE AS PASTOR OF THE CHURCH”. There is no evidence presented as to whether a valid contract was in force at the time of the complained of conduct. If it was, the pastor has sufficient recourse by way of an action to enforce the contract. If one does not exist, the trustees to be elected hereunder could negotiate a new pastorial contract to be approved by the deacons and the membership.